# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES JOHNSON, JR., and** | ) | |
| **ERICKA JOHNSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 2:18-cv-01835-MHH** |
| **ABF FREIGHT SYSTEM, INC.,** | ) | |
| **and MARK EUGENE** | ) | |
| **MASSINGILL,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

---

COME NOW Defendants, ABF Freight System, Inc. and Mark Eugene Massingill, and hereby respectfully move for the Court for summary judgment on all claims of wantonness, negligence per se, wantonness per se, negligent/wanton hiring, training, retention, and supervision, and negligent/wanton entrustment in Plaintiffs' Complaint. Defendants also respectfully move for summary judgment on all claims for punitive damages and Ericka Johnson's claim for loss-of-consortium damages after her permanent and voluntary separation from James Johnson.

i

# TABLE OF CONTENTS

**I.  STATEMENT OF UNDISPUTED FACTS**                                    1

    **A. The Subject Accident**                                   1

    **B. Mark Massingill's Driving Record**                       3

    **C. Facts Regarding Plaintiffs' Marriage and Separation**    5

**II.  STANDARD OF REVIEW**                                              5

**III.  LEGAL AUTHORITY AND ARGUMENT**                                   6

    **A. Massengill did not possess the requisite level of consciousness to establish a claim for wantonness under Alabama law.**    6

    **B. Plaintiffs cannot show that Massengill committed negligence *per se* for violating either statute referenced in Count 2 of the Complaint.**    11

    **C. There is no claim for wantonness *per se* under Alabama law.**    15

    **D. ABF did not negligently or wantonly entrust Massengill with a tractor-trailer.**    16

        **1.  Alabama law regarding entrustment**    17

        **2.  Massengill was a competent driver under Alabama law.**    18

        **3.  ABF had no reason to know of any alleged incompetency.**    20

    **E. Plaintiffs' negligent and wanton hiring, training, supervision, and retention claims fail as a matter of law because Massengill was a competent driver.**    21

    **F. Defendants are entitled to summary judgment on punitive damages because no reasonable juror could find by clear and convincing evidence that ABF or Massengill engaged in wanton conduct.**    23

**G. Defendants are entitled to summary judgment for Plaintiff Ericka Johnson's claim to loss-of-consortium damages to the extent she seeks such damages for harms occurring after she permanently separated from Plaintiff James Johnson.** 24

**IV. CONCLUSION** 24

# I.   STATEMENT OF UNDISPUTED FACTS

## A.   The Subject Accident

1.     This suit arises from an October 26, 2016 accident that occurred at the intersection of Republic Boulevard and Avenue W in Birmingham, Alabama. (Complaint, ¶¶ 7-14).

2.     The accident occurred as Mark Massingill made a left hand turn onto Avenue W from Republic Boulevard. (Doc. 83-1, p. 25; tp. 93, ll. 9-12; Doc. 83-1, p. 46, tp. 179, ll. 13-14).

3.     Massingill drove on Republic Boulevard for approximately 200 yards before the intersection after leaving an ABF Freight terminal. (Doc. 83-1, p. 46; tp. 177, l. 21).

4.     Massingill drove immediately behind James Johnson's tractor-trailer on Republic Boulevard as he approached the intersection. (Doc. 83-1, p. 46; tp. 179, l. 3).

5.     As Johnson's and Massingill's vehicles approached the intersection, Massingill observed the traffic light turn from a red light to a green light. Johnson made a left turn through the intersection. (Doc. 83-1, p. 46; tp. 178, ll. 19-21).

6.     Johnson then stopped in the left-hand lane of Avenue W at a railroad crossing, as required for tractors pulling tanker trailers. (Doc. 83-1, p. 36; tp. 140, ll. 13-16).

7.     Upon observing Johnson's stop, Massingill applied his brakes and brought his vehicle to a stop. (Doc. 83-1, p. 45; tp. 175, ll. 8-13). Massingill's vehicle came to a complete stop in the middle of the intersection. (*Id.*; tp. 175, ll. 17-19). Another vehicle drove towards him on Avenue W. (Doc. 83-1, p. 47; tp. 182, ll. 19-20).

8.     Massingill initially attempted to reverse back onto Republic Boulevard to clear the intersection, but he could not reverse onto Republic Boulevard because another vehicle approached the intersection behind him. (Doc. 83-1, p. 48; tp. 185, ll. 4-8). Massingill then attempted to swing his tractor-trailer out wide to the right and complete his turn onto Avenue W by positioning his vehicle in the right hand lane of Avenue W. (*Id*; tp. 185, ll. 19-22). Massingill had to drive his tractor onto the curb of the right hand lane of Avenue W and negotiate around a power pole and street light to complete the turn. (*Id.*; tp. 185, l. 23 – 186, l. 3).

9.     Massingill travelled approximately 3 to 5 miles per hour while making the turn. (Doc. 83-1, p. 48; tp. 187, ll. 9-16).

10.     Massingill's trailer contacted the right rear corner of Johnson's trailer as he attempted to complete the turn. (Doc. 83-1, p. 49; tp. 189, ll. 4-14).

11.     Massingill was not distracted by a cell phone, GPS device, or any other distraction at the time of the subject accident. (Doc. 83-1, p. 52; tp. 202, ll. 7-23).

12.     When asked for evidence supporting their allegation that Massingill was speeding at the time of the accident, Plaintiffs objected that the question was premature and that they would support the contention later in discovery. (Doc. 83-1, pp. 59-60, 75). To date, Plaintiffs have not supplemented their responses to this interrogatory.

### B.     Mark Massingill's Driving Record

13.     Massingill applied for a truck driver position with ABF in May of 2014. (Doc. 83-1, p. 13; tp. 47, ll. 12-16).

14.     ABF obtained a report of Massingill's driving record from the Federal Motor Carrier Safety Administration in June of 2014. (Doc. 83-1, p. 84). The Federal Motor Carrier Safety Administration reported no accidents and no regulatory violations by Massingill. (*Id.*).

15.     Massingill obtained a medical certificate required by the Federal Motor Carrier Safety Regulations on July 1, 2014 from a qualified medical examiner. (Doc. 83-1, pp. 86, 115).

16.     Massingill completed 160 hours of entry-level driver training at the University of Arkansas – Fort Smith in October of 2014. (Doc. 83-1, p. 88). ABF sent him to the driver's school after Massingill expressed interest in being a commercial driver. (Doc. 83-1, p. 6; tp. 18, ll. 9-20).

17.    Massingill passed a road test administered at the driving school on October 17, 2014. (Doc. 83-1, p. 90).

18.    Massingill obtained a Class A commercial driver's license on February 6, 2015. (Doc. 83-1, p. 5; tp. 13, ll. 16-19).

19.    Massingill never had his driver's license suspended in the 10 years preceding 2015. (Doc. 83-1, p. 9; tp. 31, l. 21 – tp. 32, l. 2).

20.    Massingill had no accidents or traffic citations in the 10 years preceding 2015. (Doc. 83-1, p. 9; tp. 32, ll. 3-6).

21.    ABF hired Massingill as a driver on February 18, 2015. (Doc. 83-1, p. 5; tp. 13, ll. 20-23).

22.    After Massingill was hired, ABF assigned him to drive with a trainer for approximately two weeks to ensure he was familiar with the roads near his Chattanooga, Tennessee terminal. (Doc. 83-1, pp. 13-14; tp. 48, l. 21 – tp. 49, l. 15).

23.    Prior to the accident at issue, Massingill had one minor collision in a parking lot while driving a tractor-trailer for ABF. He clipped the front end of another tractor-trailer during a turn. No one was injured in the accident. (Doc. 83-1, pp. 16-17; tp. 59, l. 11 – tp. 62, l. 16).

24.    Massingill was not involved in any accidents on public roadways while driving for ABF between February of 2015 and the subject accident. (*See* Doc. 83-1, p. 16; tp. 59, ll. 21-23).

25.     Massingill obtained a renewed medical certificate on June 25, 2015. (Doc. 85-1).

26.     Massingill renewed his medical certification again on June 23, 2016. (Doc. 83-1, p. 94). That certificate was current on October 26, 2016. (*Id.*).

### C.     Facts Regarding Plaintiffs' Marriage and Separation

27.     James Johnson and Ericka Johnson married in 2008. (Doc. 83-1, p. 98; tp. 8, l. 13). Their marriage did not have any problems until James Johnson underwent surgery in June of 2018. (*Id.*; tp. 8, ll. 1-11)

28.     The Johnsons separated permanently in August or September of 2018. (Doc. 83-1, p. 102; tp. 24, ll. 5-7). Ericka Johnson does not have any intent to reconcile with James Johnson, despite Mr. Johnson's suggestion that he is interested in discussing reconciliation. (Doc. 83-1, p. 105; tp. 33, l. 20 – tp. 34, l. 8).

## II.     STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). When reviewing a summary judgment motion, a court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Swain v. Hillsborough Cnty. Sch. Bd.*, 146 F.3d 855, 857 (11th Cir. 1998). The

moving party has the initial burden to show the absence of a material issue of fact, which it may meet by pointing to an absence of evidence supporting the nonmoving party's case. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party "must set forth **specific facts** showing that there is a genuine issue for trial." *A.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (emphasis added).

## III. <u>LEGAL AUTHORITY AND ARGUMENT</u>

### A. **Massengill did not possess the requisite level of consciousness to establish a claim for wantonness under Alabama law.**

Wantonness, unlike negligence, requires proof that the defendant knew of the possible dangers associated with an act and that injury would likely result therefrom. *Tolbert v. Tolbert*, 903 So. 2d 103, 114-15 (Ala. 2004). Negligence is synonymous with inattention, thoughtlessness, or a lack of due care. *Id.* In stark contrast, wantonness consists of a conscious act. *Id.* at 115. As such, "wantonness is not merely a higher degree of culpability than negligence." *Id.* at 114. Rather, negligence and wantonness are "qualitatively different tort concepts," since wantonness requires "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, **injury will likely or probably result**." *Dawson v. Smith*, No. CV-14-BE-1894-E, 2015 U.S. Dist. LEXIS 158865, at *7-8 (N.D. Ala. Nov. 25, 2015) (emphasis added).

A plaintiff bears a high burden of proof to establish wantonness and, tellingly, Alabama courts consistently have refused to elevate simple errors in judgment to wanton acts. *See Chesire v. Putman*, 54 So. 3d 336, 344-45 (Ala. 2010) (concluding that no evidence of wantonness existed where defendant-employee made an error in judgment by misjudging time needed to stop and rear-ended plaintiff's vehicle); *S. Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795, 796-98 (Ala. 1990) (holding that defendant's failure to maintain proper lookout for 150 feet, where defendant knew people frequently crossed the road in the area where pedestrian-plaintiff was struck, was nothing more than "inattention, thoughtlessness, or heedlessness" and failed to support claim for wantonness); *Jinright v. Werner Enters.*, 607 F. Supp. 2d 1275, 1277 (M.D. Ala. 2009) (finding driver was not wanton for pulling out in front of a motorist absent evidence of impaired judgment or speeding). This is because Alabama courts presume a driver will not consciously or knowingly engage in self-destructive behavior, such as causing an automobile accident that could injure the driver as well as other drivers. *Ex parte Essary*, 992 So. 2d 5, 12 (Ala. 2007).

In the context of truck accidents, Alabama courts have consistently held that a driver's inattention or neglect does not rise to the level of conduct necessary to prove wantonness. For example, in *Craft v. Triumph Logistics, Inc.,* 107 F. Supp. 3d 1218 (M.D. Ala. 2015), the court granted summary judgment to the defendants on the plaintiffs' wantonness claim where the plaintiffs alleged that the defendant driver

failed to look to his left or signal before he drove his vehicle into their lane. *Id.* at

1223. The court noted that Alabama courts presume that drivers do not engage

consciously in behavior that is likely to harm themselves. *Id.* at 1221. On another

occasion, in *Wright v. McKenzie,* 647 F. Supp. 2d 1293 (M.D. Ala. 2009), the court

concluded that a truck driver's improper turn did not rise to the level of wantonness.

There, the defendant driver made a U-turn and crossed a median after seeing a

tractor-trailer approaching from a distance.   *Id.* at 1296. The approaching

tractor-trailer crashed into the back of the turning truck, and the oncoming driver

was killed. *Id.* at 1296-97. The court concluded defendants were entitled to summary

judgment on the wantonness claim because the defendant driver perceived no danger

when executing the U-turn into the outside lane, as he perceived the approaching

tractor-trailer to be in the inside lane. *Id.* at 1302.

Likewise, the Alabama Supreme Court has refused to allow wantonness

claims in automobile accident cases where a driver violated another's right-of-way

or a rule of the road.[1] These cases illustrate that an automobile accident alone is not

---

[1]   *See Thedford v. Payne*, 813 So. 2d 905, 910-11 (Ala. Civ. App. 2001)(holding a driver was not
wanton where he testified he was looking out the side window, then looked ahead and rear-ended
another vehicle); *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996)(holding summary judgment
was proper on a wantonness claim where a light rain and an automobile attempting a turn on the
opposite side of the intersection obstructed the defendant's view of oncoming traffic, but the
defendant entered the intersection anyway); *Knowles v. Poppell*, 545 So.2d 40, 42-43 (Ala.
1989)(holding that summary judgment was proper on a wantonness claim in which a passenger
was thrown from the bed of a pickup truck after the defendant driver instructed her to sit down);
*McKenzie v. Killian*, 887 So. 2d 861, 871 (Ala. 2004)(holding that a defendant driver who entered
an interstate from an entry ramp while blinded by sunlight and thereafter collided with the
plaintiff's vehicle did not act wantonly), *overruled in part on other grounds by Ex parte Capstone*

*prima facie* evidence of wantonness. Automobile accidents happen every day, and the Alabama courts have consistently held that accidents caused by mere inattention or the failure to see another vehicle do not rise to the level necessary to prove wantonness under Alabama law.

This case is analogous to *Enochs v. Lessors, Inc.*, No. 3:11-cv-782-CSC (WO), 2012 U.S. Dist. LEXIS 119913 (M.D. Ala. Aug. 24, 2012), where the court granted summary judgment on wantonness claims arising out of an accident caused by a misjudgment. *Id.* at *14-15. The truck driver in *Enochs* exited an interstate when a temperature control light came on. *Id.* at *8-9. When he reached the end of the exit, he decided to park on the entrance ramp on the other side of the road, rather than a gas station, because he did not know whether the gas station could accommodate his tractor-trailer. *Id.* at *9. He looked both ways before entering the highway, but collided with the plaintiff's vehicle after the plaintiff crested a hill. *Id.* at *9-10.

The court found insufficient evidence to support a triable wantonness claim because the driver's error in judgment was comparable to the error at issue in *Essary*. *Id.* at *13-14. Because the driver was unfamiliar with the area, he did not see the oncoming car before the accident and made an inadvertent error and not a wanton

---

*Bldg. Corp.*, 96 So. 3d 77, 79 (Ala. 2012); *George v. Champion Ins. Co.*, 591 So. 2d 852, 854 (Ala. 1991)(affirming summary judgment in favor of a driver who was not watching the road while approaching an intersection and ran a red light because she was talking with backseat passengers); *Partridge v. Miller*, 553 So. 2d 585, 586-88 (Ala. 1989)(holding that a driver who violated the plaintiff's right of way was not wanton although the defendant made a left-hand turn in front of the plaintiff who had the right-of-way).

decision to accelerate through a yellow light. *Id.* at *11-12 (distinguishing the accident at issue from an accident discussed in *Monroe v. Brown*, 307 F. Supp. 2d 1268 (M.D. Ala. 2003)).

Here, at most, Massingill inadvertently caused this accident by misjudging the space he had to turn onto Avenue W and clear the intersection. Massengill attempted to find an alternative route to clear the intersection, but his path back to Republic Boulevard was blocked by another vehicle. (Doc. 83-1, p. 48; tp. 185, ll. 4-8). He then attempted to turn into the right-hand lane of Avenue W at three to five miles per hour. (*Id*; tp. 185, ll. 19-22; tp. 187, ll. 9-16). There is no evidence from which a jury could find that Massingill consciously knew that injury was likely or probable from his attempted turn.

Plaintiffs lack any evidence to overcome the presumption that Massingill would not engage in self-destructive behavior by driving in a manner like to injure himself and others. *Cf. Essary*, 992 So. 2d at 12 (affirming summary judgment where there was no evidence of the driver's consciousness or perception of likely or probable injury to others). A driver presumptively does not engage in such self-destructive behavior "[a]bsent some evidence of impaired judgment." *Id.* Here, there is no evidence that Massingill was intoxicated or lacked his normal faculties. *See id.* Massingill was not distracted by a cell phone or GPS device at the time of the subject accident. (Doc. 83-1, p. 52; tp. 202, ll. 7-23). Simply put, the evidence points to an

inadvertent accident and not to wanton operation. Accordingly, Defendants are entitled to summary judgment on all wantonness claims in Count 1 of the Complaint.

**B.  Plaintiffs cannot show that Massingill committed negligence *per se* for violating either statute referenced in Count 2 of the Complaint.**

Count 2 of Plaintiffs' Complaint asserts two grounds for negligence *per se*. First, Plaintiffs allege that Massingill was driving at an excessive speed given the existing traffic conditions in violation of Alabama Code § 32-5A-170. (Complaint, ¶ 28(a)). Second, Plaintiffs allege that Massingill committed reckless driving in violation of Alabama Code § 32-5A-190. (*Id.*, ¶ 28(b)). The undisputed facts support neither claim.

Among other elements, a plaintiff claiming negligence *per se* must show that a defendant violated a statute and that the statute "was enacted to protect a class of persons which includes the litigant seeking to assert the statute." *Zatarain v. Swift Transp., Inc.*, 776 F. Supp. 2d 1282, 1290 (M.D. Ala. 2011) (quoting *Edwards v. United States*, 552 F. Supp. 635, 638 (M.D. Ala. 1982), which in turn quoted *Fox v. Bartholf*, 374 So. 2d 294, 295-96 (Ala. 1979)). Generally, a driver's violation of a rule of the road qualifies as negligence *per se* unless that ordinance or rule calls for a driver to make a judgment call. *Wynn v. Kovar*, 963 So. 2d 84, 85 (Ala. Civ. App. 2007); *Consolidated Freightways, Inc. v. Pacheco-Rivera*, 524 So. 2d 346, 350 (Ala. 1988).

In *Consolidated Freightways*, the Alabama Supreme Court addressed whether a violation of Alabama Code § 32-5A-88(1) constituted negligence *per se*. 524 So. 2d at 349-50. That statute required a driver to remain in a lane of travel and not move from that lane "until [he or she] has first ascertained *that such movement can be made with safety*." *Id.* at 350 (emphasis in original) (quoting Ala. Code § 32-5A-88(1)). The Court held "that where the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not negligence per se." *Id.* It concluded that the statute at issue required a driver to use his or her judgment because it called for the driver to operate his or her vehicle with "safety." *Id.*

Plaintiffs cannot point to any evidence that Massingill was driving at an excessive speed at any time near the accident or before the accident. Plaintiffs never identified any evidence that Massingill was speeding. (Doc. 83-1, pp. 59-60, 75). For his part, Massingill recalled coming to a complete stop in the intersection and slowly accelerating to 3 to 5 miles per hour immediately before the subject accident. (Doc. 83-1, p. 45.; tp. 175, ll. 17-19); (Doc. 83-1, p. 48; tp. 187, ll. 9-16). Massingill's testimony refutes the allegation that he drove at an excessive speed before the accident or that speeding contributed to the accident in any way. Therefore, Defendants are entitled to summary judgment for the negligence *per se* claim premised upon driving at an excessive speed.

Additionally, the Rule of the Road cited by Plaintiffs in paragraph 28(a) of the Complaint is not a basis for negligence *per se* claim because it requires a driver to make a judgment call of what speed to drive. Section 32-5A-170 provides, "No person shall drive at a speed **greater than is reasonable and prudent under the conditions** and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a **safe and appropriate speed** when approaching and crossing an intersection or railroad crossing . . . ." As in *Consolidated Freightways*, the Rule of the Road addressed in paragraph 28(a) calls for a driver to operate at a "safe" speed, which necessarily requires a judgment call by a driver under the particular circumstance. *See Consolidated Freightways*, 524 So. 2d at 350. Section 32-5A-170 emphasizes the requisite judgment call in its opening sentence when it limits a driver to a *reasonable* and *prudent* speed under the conditions. Section 32-5A-170 contains no absolute or positive limit on a driver's speed under the circumstances addressed therein. Accordingly, a violation of that statute—which did not occur in this case—cannot constitute negligence *per se* under Alabama law.

Likewise, Plaintiffs cannot point to any evidence that Massingill violated Alabama Code § 32-5A-190. That statute can be violated in two ways: (1) by driving "carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property", and (2) "by driving negligently and at a speed or in a manner

likely to endanger any person or property." *Wood v. Kesler*, 323 F.3d 872, 878-79 (11th Cir. 2003) (citing *White v. State*, 69 So. 2d 874, 875 (Ala. Ct. App. 1953), and *Kirk v. State*, 47 So. 2d 283, 285 (Ala. Ct. App. 1950)). For the reasons explained in Section III(A) of this brief, Plaintiffs cannot show that Massingill operated his truck with willful or wanton disregard for others' safety. Similarly, for the reasons explained above, Plaintiffs cannot show that Massingill was speeding or likely to endanger anyone through his driving immediately preceding the accident. Massingill came to a stop and attempted to steer into a clear lane of travel to get through the intersection. There was no person or property in the right lane of Avenue W who could have been harmed by Massingill driving into that lane. Accordingly, Plaintiffs cannot show that Massingill violated § 32-5A-190, and Defendants are entitled to summary judgment on the negligence *per se* claim in paragraph 28(b) of the Complaint.

Plaintiffs summarily allege that Massingill committed negligence *per se* by violating unspecified federal regulations. (Complaint, ¶ 29). To begin, this claim fails as a matter of law because Plaintiffs allege no particular regulation that Massingill (or ABF) violated. Plaintiffs cannot argue for a more specific regulatory violation at this stage to make up for their vague pleading, as such an argument would be an improper attempt to amend the complaint. *See Flintlock Constr. Servs. v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28 (11th Cir. 2013) (explaining

that "the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)") (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

Furthermore, the Alabama Supreme Court has cast doubt on the argument that a violation of a federal trucking regulation gives rise to a *per se* breach of duty. In *Dixon v. Hot Shot Express*, 44 So. 3d 1082 (Ala. 2010), the Supreme Court addressed whether a federal trucking regulation superseded the standard of care established in Alabama's guest statute that a driver owed to a passenger. *Id.* at 1089-90. The Court found that there was no conflict between the federal regulation and the Alabama statute because "[f]ailing to fulfill a federal regulatory responsibility does not equate to tort liability under state law." *Id.* In light of *Dixon*, Plaintiffs cannot pursue a negligence *per se* claim based solely upon the violation of a federal trucking regulation.

### C.     There is no claim for wantonness *per se* under Alabama law.

In Count 2 of the Complaint, Plaintiffs summarily allege that Massingill committed wantonness *per se* by speeding, careless driving, and violating various federal and state regulations. (*See generally* Complaint, ¶¶ 27-32). Plaintiffs have not specified if they intend to pursue this claim at trial or what statutes and regulations would support such a claim. For the reasons explained above, any wantonness claim based upon excessive speed or wanton driving fails as a matter of

law. Furthermore, any wantonness claim fails because there is no evidence of Massingill's conscious or reckless disregard for the safety of others or himself, as explained in Section III(A). Any wantonness *per se* claim based upon a violation of Alabama's Rules of the Road fails as a matter of law for the reasons explained in Section III(B).

More fundamentally, Plaintiffs' wantonness *per se* claim fails because there is no such cause of action under Alabama law. The Alabama Supreme Court has referenced wantonness *per se* in a few opinions, but it has never ruled specifically that wantonness *per se* is a viable tort or defined the elements of that tort. *Rigby v. FIA Card Servs., N.A.*, No. 11-00373-KD-M, 2013 WL 5317178, 2013 U.S. Dist. LEXIS 135513, at *15-16 & n. 4 (S.D. Ala. Sept. 23, 2013). Accordingly, wantonness *per se* is not a valid claim, and Defendants are entitled to summary judgment. *Hagen v. Pelletier*, No. 2:18-cv-01169-AKK, 2019 WL 4894544, 2019 U.S. Dist. LEXIS 171111, at *14-15 (N.D. Ala. Oct. 2, 2019) (granting summary judgment on wantonness *per se* claim because it is invalid under Alabama law).

### D.     ABF did not negligently or wantonly entrust Massingill with a tractor-trailer.

Plaintiffs contend that ABF negligently and/or wantonly entrusted Massingill with the tractor-trailer he drove at the time of the accident. To the contrary, Massingill was a competent driver when he was hired by ABF and throughout his tenure with ABF, including the date of the subject accident.

## 1. Alabama law regarding entrustment

The Alabama Supreme Court described the claim of negligent entrustment as follows:

> Negligent [e]ntrustment is defined in Restatement (Second) of Torts § 390, as follows: One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Pryor v. Brown & Root USA*, 674 So. 2d 45, 51 (Ala. 1995) (quoting *Stanford v. Wal-Mart Stores, Inc.*, 600 So. 2d 234, 236-27 (Ala. 1992)). In *Pryor*, the court set out five essential elements of negligent entrustment: "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he or she is incompetent; (4) proximate cause; and (5) damages. *Id.* at 51 (quoting *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985)) (alteration adopted). "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413-14 (Ala. 2005).

The plaintiff in *Pryor* sued defendant Brown & Root for negligently entrusting a truck to the driver who struck her vehicle. 674 So. 2d at 46-47. Brown & Root obtained summary judgment on the entrustment claim at the trial-court level. *Id.* at 47. In affirming the summary judgment, the Alabama Supreme Court held that the driver's prior driving record – **two speeding tickets and a deferred DUI**

**adjudication** – was not sufficient evidence to show that the employee was an incompetent driver and that the employer had any knowledge indicating the driver's incompetence. *Id.* at 52. Other Alabama courts have reached the same conclusion. *See Askew v. R & L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) (driver not incompetent because of four accidents and two moving violations in nine years of employment); *Wright*, 647 F. Supp. 2d at 1299-1300 (license suspension for bribing an official, two speeding tickets, and felony convictions did not deem driver incompetent); *Craft*, 107 F. Supp. 3d at 1224-26 (one speeding ticket, one accident, one tag violation, one seatbelt violation and one failure to stop violation did not render driver incompetent).

## 2. Massingill was a competent driver under Alabama law.

Massingill was a competent driver when hired by ABF and throughout his tenure with ABF. When ABF hired him as a driver, he had graduated from driving school and obtained a Class A Commercial Driver's License. (Doc. 83-1, p. 5; tp. 13, ll. 16-19); (Doc. 83-1, p. 88). He had passed a road test. (Doc. 83-1, p. 90). He had no accidents reported in a commercial vehicle, as reflected in the pre-employment screening report obtained by ABF. (Doc. 83-1, p. 84). Massingill was well-qualified to drive a tractor-trailer at the time of hiring.

Massingill also operated his tractor-trailer competently once entrusted to drive for ABF. He had one accident in a parking lot during his twenty-month driving

tenure with ABF before the subject accident. (Doc. 83-1, pp. 16-17; tp. 59, l. 11 – tp. 62, l. 16). By far, Massingill drove more competently than the drivers held to be competent as a matter of law in *Pryor* and *Askew*. The drivers in *Pryor* and *Askew* both had multiple moving violations prior to their accidents, whereas Massingill did not have any in a tractor-trailer. The driver in *Askew* had four accidents before the accident at issue, whereas Massingill had only one.

Defendants expect that Plaintiff will argue that Massingill was an incompetent driver because he had a similar accident during a turn within a year of the subject accident. However, Alabama law is clear that "a single instance of negligence will not prove an employee incompetent, nor will it impute knowledge to his employer of incompetency; the most competent employee may be negligent." *Collins v. Wilkerson*, 679 So. 2d 1100, 1103 (Ala. Civ. App. 1996) (citing *Alabama City, Gadsden & A. Ry. v. Bessiere*, 66 So. 805 (Ala. 1914)). In *Joyner v. B & P Pest Control, Inc.*, 853 So. 2d 991, 999-1000 (Ala. Civ. App. 2002), the Alabama Court of Civil Appeals rejected the argument that an employee was incompetent due to a single prior incident where he incorrectly applied termiticide because the single prior incident was insufficient to prove the employee's inability or lack of disposition to perform his job properly. Here, as in *Joyner*, Massingill's one prior accident during a turn is insufficient to show that he was unable to drive a tractor-trailer properly or lacked the disposition to perform his job properly.

### 3. ABF had no reason to know of any alleged incompetency.

Further, Plaintiffs' entrustment claims fail because ABF had no knowledge of or reason to know of Massingill's alleged incompetency to drive. *See Pryor*, 674 So. 2d at 51. As discussed above, Massingill only had one minor accident during his twenty-month driving tenure with ABF before October 26, 2016. (Doc. 83-1, pp. 16-17; tp. 59, l. 11 – tp. 62, l. 16). He had passed a road test, received a commercial license, and completed training with an ABF trainer. His one prior accident was insufficient to place ABF on notice of his alleged incompetency because the most competent employee can commit a negligent act. *See Collins*, 679 So. 2d at 1103. For these reasons, ABF had no reason to know of Massingill's purported incompetency, and, thus, Plaintiffs' entrustment claim fails as a matter of law.

Plaintiffs cannot come close to meeting the heightened standard for wanton entrustment. Their wanton-entrustment claim requires a showing that ABF entrusted a commercial motor vehicle to Massingill "while knowing that entrustment would likely or probably result in injury to others." *Jordan ex rel. Jordan v. Calloway*, 7 So. 3d 310, 317 (Ala. 2008). Massingill was a qualified driver with no history of serious accidents. He passed his pre-employment road test and had a current medical certification. Therefore, there is no evidence of ABF's knowledge that Massingill's driving would "likely or probably result in injury," and ABF is entitled to summary judgment on the wanton entrustment claim in Count 4.

**E.** **Plaintiffs' negligent and wanton hiring, training, supervision, and retention claims fail as a matter of law because Massingill was a competent driver.**

Plaintiffs' hiring, training, supervision, and retention claims are of a piece with their entrustment claims, and ABF is entitled to summary judgment on them for similar reasons. To establish a negligence claim premised upon ABF's oversight or employment of Massingill, Plaintiffs must demonstrate that:

> (1) [Massingill] committed a tort recognized under Alabama law, *see Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999), (2) [Massingill] was incompetent to drive his tractor-trailer, *see Lane v. Central Bank of Alabama*, 425 So. 2d 1098, 1100 (Ala. 1983), (3) [ABF] had actual notice of [Massingill's] incompetence or would have known it had it exercised due diligence, *see Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001), and (4) [ABF] failed to respond to this notice adequately.

*Askew*, 676 F. Supp. 2d at 1303-04. For the reasons explained above, Massingill was always a competent driver for ABF before the accident. Additionally, ABF had no knowledge of his purported incompetency. Accordingly, ABF is entitled to summary judgment on all hiring, training, supervision, and retention claims.

Plaintiffs' negligent and wanton hiring claims against ABF also fail because ABF met the standards of care established by federal regulation when hiring Massingill as a driver in February of 2015. Massingill held a commercial driver's license and a current medical certificate when he was hired as a driver. (Doc. 83-1, p. 5; tp. 13, ll. 16-19); (Doc. 83-1, p. 86). ABF ran a background check on Massingill's driving history that revealed no accidents or traffic violations. (Doc.

83-1, p. 84). Massingill passed a road test in October of 2014 after attending truck driving school. (Doc. 83-1, p. 90). Plaintiffs have not identified any specific deficiency in ABF's hiring process (*see* Complaint, ¶¶ 33-37), nor can they show how correcting such a deficiency would have prevented the subject accident. Therefore, Plaintiffs' negligent and wanton hiring claims fail as a matter of law, and Defendants are entitled to summary judgment on these claims.

Plaintiffs' negligent/wanton training, supervision, and retention claims suffer from a lack of specificity as well. Plaintiffs have yet to identify any specific failures by ABF in training and supervising Massingill. Before hiring him as a driver, ABF sent Massingill to a truck driving school where he received 160 hours of training. (Doc. 83-1, p. 6; tp. 18, ll. 9-20). After it hired him in February of 2015, ABF assigned Massingill to a trainer for approximately two weeks. (Doc. 83-1, pp. 13-14; tp. 48, l. 21 – tp. 49, l. 15). Plaintiffs cannot argue for a more specific training, supervision, or retention deficiency at this stage to make up for their vague pleadings, as such an argument would be an improper and untimely attempt to amend the complaint one month before trial. *See Flintlock Constr. Servs.*, 710 F.3d at 1227-28.

Defendants expect that Plaintiff will argue ABF failed to adequately train and/or supervise Massingill because it did not assign him remedial training after his prior accident where he cut a turn short. Again, a negligent/wanton training or

supervision claim requires an employer to have notice of an employee's incompetency, and a single prior act is insufficient to show an employee's incompetency. *See Joyner*, 853 So. 2d at 999-1000. In *Joyner*, the Alabama Court of Civil Appeals rejected such claims against an employer based on the employee's pre-incident misapplication of termiticide because a single negligent act is not enough as a matter of law to show an employee's inability or lack of disposition to properly perform his job. Likewise, this Court should reject any negligent/wanton training or supervision claim resting on Massingill's earlier accident alone.

F. **Defendants are entitled to summary judgment on punitive damages because no reasonable juror could find by clear and convincing evidence that ABF or Massingill engaged in wanton conduct.**

Claims for punitive damages are distinct from those for compensatory damages because a plaintiff must provide "clear and convincing evidence" of a defendant's wanton conduct in order to obtain punitive damages. Ala. Code § 6-11-20(a). Clear and convincing evidence is "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." *Id.* § 6-11-20(b)(4). No reasonable juror could find clear and convincing evidence of wantonness in this case, where ABF complied with the applicable regulations, Massingill was a qualified and competent driver, and the subject accident occurred due to Massingill's inadvertent conduct.

**G. Defendants are entitled to summary judgment for Plaintiff Ericka Johnson's claim to loss-of-consortium damages to the extent she seeks such damages for harms occurring after she permanently separated from Plaintiff James Johnson.**

Plaintiff Ericka Johnson seeks compensatory damages for the loss of James Johnson's "company, affection, society, and companionship." (Complaint, ¶ 45). Under Alabama law, a claim for loss of consortium rests on "damage to [a spouse's] marital interest resulting from the underlying wrongful act." *Ex parte N.P.*, 676 So. 2d 928, 930 (Ala. 1996). Ericka Johnson has physically separated from James Johnson and no longer resides with him. (Doc. 83-1, p. 105; tp. 33, l. 20 – tp. 34, l. 8). She has testified that she has no interest in reconciling with James Johnson despite his suggestions that they discuss reconciling. (*Id.*). She is not entitled to any damages for the period of time following her separation from Mr. Johnson because her marital interest in James Johnson's company, affection, society, and companionship has been voluntarily relinquished by her permanent separation from James Johnson. *See Dooley v. Skodnek*, 138 A.D.2d 102, 107 (N.Y. App. Div. 1988).

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court enter an order granting summary judgment in their favor on all claims in Counts 2, 3, and 4 and the wantonness claim in Count 1. Defendants also request that this Court grant summary judgment in their favor on all claims for punitive damages and Ericka Johnson's claim for loss-of-consortium damages to the extent she seeks such

damages for the period following her permanent and voluntary separation from James Johnson.

Respectfully submitted,

*/s/ Thomas L. Oliver, II*
Thomas L. Oliver, II (ASB-3153-R53T)
Robert A. Arnwine, Jr. (ASB-5964-B65A)
Dennis O. Vann, Jr. (ASB-5854-I61U)
Attorneys for Defendants

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone: (205) 822-2006
Facsimile: (205) 822-2057
E-mail: toliver@carrallison.com
rarnwine@carrallison.com
dvann@carrallison.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2020, I have served a copy of the above and foregoing on counsel for all parties by:

_____Facsimile transmission;
_____Hand Delivery;
\_\_\_\_\_Electronic Mail;
_____Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to; and/or
\_\_X\_\_Using the Alafile or CM/ECF system which will send notifications of such to the following:

Eric Tiebauer
**The Tiebauer Law Offices, LLC**
P.O. Box 1421
4363 Highway 45 North
Waynesboro, Mississippi 39367
Telephone:   (601) 735-5222
Facsimile:   (601) 735-5008

Jason M. Baer
**Baer Law, LLC**
3000 Kingman Street
Suite 200
Metairie, LA 70006
Telephone:   (504) 372-0111
Facsimile:   (504) 372-0151

*s/ Thomas L. Oliver, II*
Of Counsel