FILED

2020 Nov-30  PM 04:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES JOHNSON, JR., and ERICKA JOHNSON,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **Case No.: 2:18-cv-01835-MHH** |
| **ABF FREIGHT SYSTEM, INC., and MARK EUGENE MASSINGILL,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE* TO EXCLUDE DR. LARS REINHART

COME NOW Defendants, ABF Freight System, Inc., and Mark Eugene Massingill, by and through their counsel of record, and file the following response in opposition to Plaintiffs' Motion *in Limine* to Exclude Dr. Lars Reinhart (Docs. 67 & 68), Plaintiffs' Motion *in Limine* to Exclude/Limit Dr. Lars Reinhart From Opining on Biomechanics & Accident Reconstruction (Docs. 73 & 74), and Plaintiffs' *Daubert* Motion to Exclude Dr. Lars Reinhart Because His Opinions are Unreliable (Docs. 76 & 77).

{DOC# 00692355}

i

## TABLE OF CONTENTS

I.    **INTRODUCTION**                                                                                              1

III.    **LEGAL ANALYSIS**                                                                                        8

    A. **Standard of Review**                                                                    8

    B. **Dr. Reinhart is Well-Qualified to Testify to All Opinions Provided in His Expert Report.**                                                                                             12

    C. **Dr. Reinhart Applied a Reliable and Peer-Reviewed Methodology to Produce His Disclosed Opinions.**                                                                            19

    D. **Dr. Reinhart Relied on a Sufficient Factual Basis for His Opinions, Including a Reliable Reconstruction of the Subject Accident.**                                        20

    E. **Dr. Reinhart Reliably Applied Injury Causation Analysis to Find that the Accident at Issue Could Not Have Caused an Acute Lumbar Spinal Injury as Claimed by Plaintiffs.**                                                                         24

    F. **Dr. Reinhart's Injury Causation Analysis and Biomechanical Opinions are Helpful to the Jury Because They Address Matters Beyond the Knowledge of the Average Layperson.**                                                26

IV.    **CONCLUSION**                                                                                             28

Plaintiffs inexplicably seek to exclude all testimony by a well-qualified medical doctor and accredited accident reconstructionist with substantial experience in biomechanics, occupant kinematics, and injury causation analysis. Furthermore, Plaintiffs seek to disqualify the *only* expert to analyze the October 26, 2016 accident using biomechanics and kinematics methodologies. Dr. Reinhart is well-qualified by education, training, and experience to opine on the accelerations associated with the subject accident and whether they were sufficient to cause the spinal injuries claimed by Plaintiff James Johnson. He reliably applied Injury Causation Analysis, a peer-reviewed methodology, to the facts of the subject case to arrive at his opinions. At most, Plaintiffs' challenges to Dr. Reinhart's opinions are grounds for cross-examination, not exclusion. Accordingly, Dr. Reinhart's expert testimony is admissible in its entirety under *Daubert* and Federal Rule of Evidence 702.

## I. INTRODUCTION

This suit arises from a motor vehicle accident on October 26, 2016 at the intersection of Avenue W and Republic Boulevard in Birmingham, Alabama. The rear of Mark Massingill's trailer collided with the right rear corner of James Johnson's trailer. Plaintiffs allege this accident occurred because Massingill negligently and wantonly operated his vehicle. Plaintiffs claim that the accident caused Mr. Johnson to suffer physical injuries, severe pain, permanent disability, and impairment, and associated medical expenses.

One of the primary issues in this case is whether the accident caused the medical injuries claimed by Mr. Johnson. Mr. Johnson acknowledges that he continued working on October 26, 2016 after the accident and made multiple deliveries. He did not seek medical attention until six days after the accident. He did not file a workers' compensation claim with his employer. Nevertheless, Mr. Johnson contends that the accident caused injuries that necessitated a multi-level fusion surgery, after which he suffered numbing pain to his lower extremities that permanently prevent him from driving a commercial vehicle or engaging in any medium-duty or heavy-duty employment.

To refute Plaintiffs' claims and the magnitude of injuries attributed to the subject accident, Defendants retained Dr. Lars Reinhart as an expert to offer opinions regarding injury mechanisms and injury causation. Dr. Reinhart is an accredited traffic accident reconstructionist, board-certified emergency medicine physician, and a mechanical engineer. Dr. Reinhart obtained a bachelor's degree in mechanical engineering from the University of Texas and a medical degree from the University of Texas – Southwestern. (Doc. 77-5, p. 14, ll. 14-17). He took courses in physics, mathematics, statics, and dynamics that provided foundational education regarding the laws of motion. (Doc. 77-5, p. 18, l. 19 - p. 19, l. 2; Defendants' Exhibit A, Affidavit of Lars H. Reinhart, MD, p. 2). In medical school, he took courses in human anatomy, physiology, and neuroscience, among other courses. (Defendants'

Exhibit A, p. 2). He also completed training in internal medicine, general surgery, neurology, radiology, orthopedics, trauma surgery, and emergency medicine. (*Id.*). Dr. Reinhart completed a three-year residency in emergency medicine that included further training in general surgery, trauma surgery, and orthopedics, among other specialties. (*Id.*).

Dr. Reinhart then was board certified in emergency medicine in 2000 and practiced full-time for 17 years as an emergency room physician.[1] (Doc. 77-5, p. 14, ll. 20-22; p. 16, ll. 9-10). As an emergency room physician, he studied and reviewed radiologic imaging when necessary with the assistance of a certified radiologist. (*Id.*, p. 100, ll. 18-23). He sometimes reviewed medical imaging contained in a patient's medical record. (*Id.*, p. 100, ll. 8-12). He did not recall ordering spinal CT scans in his medical practice because such radiology typically is performed in a non-emergency, outpatient setting. (*Id.*, p. 101, ll. 4-8).

Dr. Reinhart has been a consultant with Biodynamic Research Corporation for seven years. (Doc. 77-5, p. 15, ll. 1-3). He completed training in Traffic Accident Reconstruction at Northwestern University. (*Id.*, p. 18, l. 23 – p. 19, l. 2; p. 19, ll. 6-13). He passed the accreditation exam for accident reconstructionists administered

---

[1] Plaintiffs misrepresent Dr. Reinhart's qualifications insofar as they assert he has not practiced medicine in seven years. (Doc. 68, p. 4). In fact, Dr. Reinhart maintained a clinical practice until the end of 2017. (Doc. 77-5, p. 16, ll. 9-10).

by the Accreditation Commission for Traffic Accident Reconstruction ("ACTAR"). (*Id.*, p. 20, ll. 14-20).

Dr. Reinhart is an accredited Traffic Accident Reconstructionist through ACTAR. (Defendants' Exhibit A, p. 3). He is a board-certified specialist in emergency medicine and is licensed to practice medicine in Texas, South Carolina, and Virginia. (*Id.*). He is affiliated with several automotive engineering and accident-investigation organizations, including the Biomedical Engineering Society, the Society of Automotive Engineers, and the Association for the Advancement of Automotive Medicine. (Doc. 68-2, p. 3). He has co-authored five peer-reviewed publications on biomechanical and automotive engineering topics, including one publication specifically addressing injuries from low-speed rear impacts and one specifically addressing lumbar spine accelerations. (*Id.*, p. 5).

Dr. Reinhart has considerable experience as an expert witness. He has performed over 650 biomechanical analyses for BRC. (Defendants' Exhibit A, p. 3). He has been deposed approximately 80 to 85 times and has testified in 15 to 17 trials. (Doc. 77-5, p. 8, l. 9; p. 9, l. 3). His testimony has been admitted over *Daubert* challenges in multiple federal courts. *See, e.g.*, *Jones v. Harley-Davidson, Inc.*, Case No. 2:14-cv-694-RWS-RSP, 2016 U.S. Dist. LEXIS 129474 (E.D. Tex. Sept. 22, 2016) (attached hereto as Exhibit B); *Dewit v. UPS Ground Freight, Inc.*, Case No.

1:16-cv-00036-MW-GRJ, Doc. 140 (N.D. Fla. July 1, 2017) (attached hereto as

Exhibit C).

Dr. Reinhart was retained to perform a reconstruction of the subject accident,

establish the severity of the accident, and perform an injury causation analysis using

biomechanical principles. (Doc. 77-5, p. 9, ll. 20-23). As Dr. Reinhart testified,

> Injury causation analysis is sort of the confluence of all those elements. It begins with accident reconstruction, it establishes crash severity, also reviewing of medical records, looking at the biomechanics of injury, what goes into causing certain injuries, reviewing the radiology information. It is sort of a confluence of these various materials that ultimately lead to was the event causally related to the injury that's been claimed.

(*Id.*, p. 11, ll. 1-9). Dr. Reinhart has explained the methodology as follows:

> ICA uses a recognized method known as process analysis, which is a step-wise procedure in which each subsequent step builds upon its predecessor. In event analysis, the following sequential approach is useful:
>
> - analysis of event;
>
> - analysis of human kinematics;
>
> - analysis of biomechanics;
>
> - determination of injury potential; and
>
> - validation through medical analysis.
>
> The first two steps use the principles of physics, and aim to define possible mechanisms of injury. The third step uses biomechanics to determine the nature of tissue strain or deformation. The fourth step determines the potential injuries. The final step validates step four by

{DOC# 00692355}                                         5

reconciling potential injuries with reported injuries. Reiterating a key point, each element of ICA relies on the fulfillment of preceding elements. For example, injury potential (step four) requires a thorough analysis of occupant kinematics and biomechanics (steps two and three), themselves predicated on analysis of the event dynamics (step one).

(Defendants' Exhibit A, p. 7).

Dr. Reinhart determined the type of accident at issue by reviewing post-collision photographs. (Doc. 68-3, pp. 9-10). "Post-collision photographs of Mr. Johnson's tanker trailer demonstrated sideswipe-type damage to the rear right corner of the trailer. The right rear light bar was broken off of the bumper and hanging downward." (*Id.*, p. 9). Dr. Reinhart determined from the post-accident photographs, accident reports, and driver testimony that "Mr. Johnson would have experienced similar motion as other occupations of low-speed, rear-end type collisions." (*Id.*, p. 16). The principle direction of force upon Mr. Johnson was "directed from six o'clock." (*Id.*, p. 22).

Dr. Reinhart also reviewed accident reports and records from medical providers identified by Mr. Johnson. (*See id.*, pp. 5-9). He noted that Mr. Johnson reported no injuries to the responding police officer and testified to suffering no back pain while driving on October 26, 2016. (*Id.*, p. 4). During his review of the medical records, Dr. Reinhart examined the imaging studies on file alongside a board-certified radiologist. (*Id.*, p. 9). Dr. Reinhart determined that "the findings/impressions provided in those radiology reports were in fact accurate and

clearly identified the presence of chronic degenerative changes and the lack of any acute injury having occurred as a result of the subject collision." (Defendants' Exhibit A, p. 15).

Dr. Reinhart then conducted a reconstruction of the accident using exemplar tractor-trailers. (Doc. 68-3, pp. 9-14). The reconstruction used comparable tractors and trailers as those driven by James Johnson and Mark Massingill. (*Id.*, p. 10). The exemplar tractor-trailer for Johnson's vehicle "used an empty [ ] tanker trailer to give every benefit of the doubt to Plaintiff such that his surrogate could experience the most severe collision that was allowable under the remaining constraints and context of the event. Had I used a fully loaded [tanker] trailer, the Law[s] of Physics dictate that Plaintiff's crash severity must therefore decrease in severity." (Defendants' Exhibit A, p. 16). This choice was consistent with the documents produced by Mr. Johnson's employer, which show that he received 8,000 gallons of gasoline after 4:00 a.m. on October 26, 2016, approximately an hour after the subject accident. (Doc. 77-5, p. 130, ll. 18-21).

Dr. Reinhart placed a surrogate driver in Johnson's position in the tractor-trailer. (Doc. 68-3, p. 11). Accelerometers were placed on the surrogate's head, thoracic spine, and lumbar spine to measure the accelerations experienced by the surrogate from the impact. (*Id.*, p. 12). The accelerometers were calibrated according to the manufacturers' recommendations. (*Id.*). The surrogate positioned himself with

both hands on the steering wheel and one foot on the brake, consistent with Mr. Johnson's testimony about his seated position at the time of the accident. (*Id.*, pp. 11-12). The tractor-trailers were positioned at the same angle as shown in the post-accident photographs. (*Id.*, pp. 13-14). The reconstructed collision occurred at 3.2 to 4.2 miles per hour. (*Id.*, p. 14).

The reconstructed collision resulted in damage considerably more severe to the surrogate tanker trailer than the damage to Johnson's tanker trailer in post-accident photographs. (*Compare id.*, p. 15 with *id.*, p. 10). Regardless, the exemplar driver in Mr. Johnson's position only experienced approximately 0.2 to 0.3 g of acceleration to his head, cervical spine, and lumbar spine. (*Id.*, p. 16). Such accelerations to the head and spine occur during normal operation of a motor vehicle and are not sufficient to cause acute injury to cervical or lumbar spinal discs. (*Id.* at pp. 22-23).

## II.    LEGAL ANALYSIS

### A.    Standard of Review

Rule 702 governs the admissibility of expert testimony and evidence. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010). Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals. Inc.*, 509 U.S. 579 (1993), the United States Supreme Court made it clear Rule 702 is meant to ensure expert evidence is both reliable and relevant. *McCreless v. Global Upholstery Co.*, 500 F. Supp. 2d 1350, 1353 (N.D. Ala. 2007). The *Daubert* principles apply to all expert testimony, whether based on scientific, technical, or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999). Thus, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id*. at 149 (quoting *Daubert*, 509 U.S. at 592) (alteration adopted). *Daubert* imposes on a trial court the duty to act as a "gate-keeper" under Rule 702, by ensuring that expert testimony is reliable and relevant before being admitted. *Haney v. Eaton Elec., Inc.*, 528 F. Supp. 2d 1262, 1266 (N.D. Ala. 2007).

In the Eleventh Circuit, determining the admissibility of expert testimony requires a "rigorous three-part inquiry" in which the Court determines whether:

{DOC# 00692355}                                    9

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The burden of establishing that expert testimony meets these three elements rests with the proponent of the expert testimony. *Id*. at 1260.

In performing the gate-keeping role, "[it] is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Technology DC-8, Inc. v. Hurel-Dubois U.K. Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The "district court's gate keeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury." *Id.* (quotation omitted). "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Daubert*, 509 U.S. at 596).

An expert may be qualified to testify based on scientific training, education, experience, skill, or other knowledge in the subject for which his or her testimony is offered. *Frazier*, 387 F.3d at 1260-61. Courts in the Eleventh Circuit have rejected arguments that an expert needs education or training in a narrowly-defined field in order to offer expert testimony in court. "Rule 702 takes a liberal view of expert

witness qualifications." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006)). An expert may offer opinions on subjects for which she is "competent and qualified," not merely subjects for which she is a "leading authority." *Id.* (quoting *Leathers*, 233 F.R.D. at 692). "Simply stated, an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *McGee v. Evenflo Co.*, No. 5:02-CV-259-4, 2003 U.S. Dist. LEXIS 25039, at *8 (M.D. Ga. Dec. 11, 2003).

Expert testimony is not subject to exclusion simply because an expert has not excluded or considered all variables. "[N]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility." *Quiet Technology DC-8, Inc.*, 326 F.3d at 1346 (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)). Furthermore, an expert "may rely on circumstantial evidence to support his theory." *Great Northern Ins. Co. v. Ruiz*, 688 F. Supp. 2d 1362, 1371 (S.D. Ga. 2010) (quoting *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 137 F. Supp. 2d 1283, 1289 (M.D. Ala. 2001)).

District courts across the United States have found BRC's consultants qualified to opine on Injury Causation Analysis. *E.g.*, *Hernandez v. Crown Equip. Corp.*, 92 F. Supp. 3d 1325, 1343-44 (M.D. Ga. 2015) (finding Dr. Thomas McNish qualified to opine about the injury potential facing forklift operators in various

scenarios); *Burgo v. Davis*, No. 15-2430, 2016 U.S. Dist. LEXIS 77247, at *10-12 (E.D. La. June 13, 2016) (finding Dr. Charles Bain qualified to testify on accident-reconstruction and medical causation matters); *Cooper v. Old Dominion Freight Line, Inc.*, No. 09-2441-JAR, 2011 U.S. Dist. LEXIS 37488, at *12-13 (D. Kan. Apr. 6, 2011) (finding Dr. Richard Harding qualified to offer opinions on injury causation in an automobile-accident case, despite arguments that Dr. Harding lacked degrees in biomechanics or physics and did not have experience in "side-on plus" collisions); *Sport v. Cont'l W. Ins. Co.*, No. 04-1386-KMH, 2006 U.S. Dist. LEXIS 9801, at *6-8 (D. Kan. Mar. 10, 2006) (finding Dr. Bain qualified to offer opinions on injury causation in an automobile-accident case because he was a trained physician with experience as an emergency room doctor, he frequently treated individuals involved in vehicle accidents, he had an undergraduate degree in engineering, he completed an accident-reconstruction course, and he had produced approximately 350 injury causation reports and co-authored a paper on vehicle accidents).

**B.      Dr. Reinhart is Well-Qualified to Testify to All Opinions Provided in His Expert Report.**

There is no merit to Plaintiffs' contentions that Dr. Reinhart is unqualified to testify on accident reconstruction, biomechanics, occupant kinematics, or injury causation. Dr. Reinhart has been educated on the requisite scientific information through his undergraduate education. Dr. Reinhart is board-certified in emergency medicine, which involves the assessment of traumatic injuries. He completed

{DOC# 00692355}                                    12

comprehensive traffic accident reconstruction courses from Northwestern University and has been accredited by ACTAR.

Dr. Reinhart possesses several years' experience in accident analysis, injury causation analysis, and occupant kinematics. He has conducted over 650 biomechanical assessments for BRC. He has testified in over 80 cases as an accident-reconstruction and injury-causation expert. He has co-authored peer-reviewed publications on automotive engineering and biomechanical topics, including publications on low-speed rear impacts and lumbar spine accelerations. (Doc. 68-2, p. 5). In *Sport*, a federal district court considered and rejected similar qualifications arguments made against a BRC expert by a plaintiff due to the expert's undergraduate education in engineering, his training in traffic accident reconstruction, his biomechanical experience from preparing 350 injury causation reports, and his published research on vehicle accidents. *Sport*, 2006 U.S. Dist. LEXIS 9801, at *8. *See also Cooper*, 2011 U.S. Dist. LEXIS 37488, at *11-13 (rejecting qualifications challenge to BRC injury causation expert due to the expert's pre-doctoral education in physics, medical education, medical experience, training in traffic accident reconstruction, and publications in the field of injury causation analysis). Like the experts who were permitted to testify in *Sport* and *Cooper*, Dr. Reinhart is well-qualified by education, training, and experience to testify on the topics addressed in his report.

Plaintiffs incorrectly claim that Dr. Reinhart has been proffered as an expert on "spine surgery." (Doc. 68, p. 4). Dr. Reinhart has not been retained to provide an opinion on whether Mr. Johnson's lumbar fusion surgery was an appropriate or medically necessary treatment for the degenerative conditions in his spine. As Dr. Reinhart has explained,

> Plaintiff confuses medical causation and Injury Causation Analysis . . . . Medical causation is applicable to the standards of care involved in the treatment and subsequent care provided to an individual after the diagnosis of an injury and is applicable to the field of medical malpractice, where a doctor and his course of treatment of a patient is judged by his adherence to the standards of care practiced by those of the same field of expertise and treatment. I have not undertaken a medical causation review, and I do not opine in any way regarding the subsequent treatment received or given to Mr. Johnson in this matter. My analysis considers whether there was an injury mechanism and sufficient forces involved in the subject vehicular interaction to cause an injury of the type alleged by Mr. Johnson, hence an Injury Causation Analysis. In this vehicular interaction, as set forth more fully within my report, the extremely minor forces and accelerations experienced by Mr. Johnson within his vehicle were significantly less than those he would have experienced with merely entering and exiting his tractor after the collision as well as on a daily basis.

(Defendants' Exhibit A, p. 13). Opinions regarding the accelerations experienced during a particular accident and the likelihood of those accelerations causing a particular injury are within the scope of Dr. Reinhart's expertise in accident reconstruction, biomechanics, and medicine; they are not within the scope of expertise for a radiologist or neurosurgeon who lacks education, training, or experience in analyzing accidents.

Plaintiffs cite three cases to support their arguments that Dr. Reinhart is unqualified to render his expert testimony. All three cases are distinguishable, and none of these cases support the argument that an injury-causation expert must have a particular board certification or professional specialty. The first opinion, *Alexander v. Smith & Nephew*, 98 F. Supp. 2d 1276 (N.D. Okla. 2000), addressed in the context of a products-liability case whether an emergency physician was qualified to opine that a medical device was useless for the plaintiff's condition and caused scarring and stenosis in the plaintiff's spine post-installation. *Id.* at 1281-82. The *Alexander* Court determined that the physician's medical degree was an insufficient qualification to allow him to testify to the functioning of an orthopedic device, the advantages of an alternative spinal fixation device, or the cause of the spine ailments alleged by the plaintiff. *Id.* at 1281. Furthermore, it found the physician's experience as an emergency room physician and workers' compensation examiner to be insufficient for the specialized orthopedic and spine opinions at issue. *Id.* at 1282. It specifically noted that the plaintiff made "no attempt to demonstrate Dr. McKenzie's qualifications in these specialized areas" beyond relying upon the expert's medical degree. *Id.*

Here, unlike the physician in *Alexander*, Dr. Reinhart has considerable education, training, and experience in accident reconstruction and injury causation analysis beyond his medical qualifications. He has taken numerous courses in

accident reconstruction and engineering principles, and he has been accredited as an accident reconstructionist. He has performed injury causation assessments for seven years and given over 80 depositions in personal injury matters. He has published peer-reviewed papers and articles, including an article on rear-end collisions and an article on lower back injuries. Therefore, Dr. Reinhart's qualifications do not rest solely upon his medical degree or work as a physician.

Furthermore, the challenged expert in *Alexander* testified about the fitness of the defendant's medical device and its post-installation condition, in addition to causation, despite a lack of any product engineering credentials or experience in the medical device industry. *See Alexander*, 98 F. Supp. 2d at 1281. A medical degree alone is not a sufficient credential to qualify a product-defect expert in a products-liability action. Here, Dr. Reinhart is disclosed as an accident reconstruction and injury causation expert, not a product-defect expert, and he possesses substantially more qualifications than the physician struck in *Alexander*.[2]

---

[2] It also should be noted that *Alexander* was one in a series of products-liability cases against a medical device manufacturer where the same attorneys utilized treating physicians to render both product-defect and causation opinions. *See Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1314-16 (N.D. Okla. 2000) (finding a family medicine physician unqualified to proffer testimony on the mechanical soundness of the medical device and alleged post-installation spinal injuries); *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1299, 1304-05 (N.D. Okla. 2000) (finding the same family medicine physician unqualified to proffer similar opinions for a different products-liability plaintiff); *Alexander v. Smith & Nephew, P.L.C.*, 90 F. Supp. 2d 1225, 1229-30 (N.D. Okla. 2000) (finding an emergency medicine physician unqualified to give testimony on fitness of device and alleged post-installation spinal injuries); *Alexander v. Smith & Nephew, P.L.C.*, No. 96-CV-1004-K (E), 2000 U.S. Dist. LEXIS 22146, at *7-11 (N.D. Okla. Mar. 27, 2000) (finding the same emergency medicine physician unqualified to give similar opinions for a different products-liability plaintiff). When reviewed in context, the *Alexander* opinion cited

The *Daubert* opinion in *United States v. Ifediba*, No. 2:18-cr-00103-RDP-JEO, 2019 WL 3082662, 2019 U.S. Dist. LEXIS 116826 (N.D. Ala. July 15, 2019), also does not support Plaintiffs' motions *in limine* because there was no challenge to the expert's qualifications in that case. The *Ifediba* opinion expressly states, "There is not an issue about Dr. Schwarz's qualifications. . . . Indeed, the parties have stipulated to Dr. Schwarz's qualifications, and the Government does not argue Dr. Schwarz's qualification." 2019 U.S. Dist. LEXIS 116826, at *8-9. The Court listed the expert's qualifications for the purpose of completeness, but the expert's qualifications had been stipulated to by the parties. Therefore, *Ifediba* does not support excluding Dr. Reinhart.

Finally, this Court's denial of a qualifications challenge to an expert in *Ruiz v. Wintzell's Huntsville, L.L.C.*, 2017 WL 4305004, 2017 U.S. Dist. LEXIS 159547 (N.D. Ala. Sept. 28, 2017), **weighs against the challenges raised by Plaintiffs to Dr. Reinhart's qualifications**. As in this case, the party raising the *Daubert* challenge in *Ruiz* argued that the expert lacked qualifications on a particular specialized topic (there, oyster origination). *Ruiz*, 2017 U.S. Dist. LEXIS 159547, at *13. This Court disagreed and found that the expert's research, publications, and teaching experience in seafood distribution chains gave him "sufficient experience

---

by Plaintiffs solely rejects an attempt to use a board-certified physician for an overly-wide range of opinions based solely upon medical credentials; it does not rule that a physician must have certification and experience in a medical specialty in order to provide an injury-causation opinion.

with food safety and distribution, particularly with respect to shellfish, to give testimony . . . ." *Id.* at *14-15. Here, as in *Ruiz*, Dr. Reinhart's medical and scientific education, his training in accident reconstruction, his years of experience in injury causation analysis, and his publications in the field have given him sufficient experience to opine on the topics addressed in his expert opinions.

Ultimately, Plaintiffs provide no case law to support their proposition that a physician must be board-certified in a particular specialty to testify that an individual's reported injury is inconsistent with the accelerations associated with a particular accident. Nor have Plaintiffs provided case law to support their proposition that an expert with training and experience in engineering and biomechanical injury causation analysis must have a particular degree in biomechanics or a particular engineering license in order to testify about the application of biomechanical principles to this low-speed accident. Rather, courts in the Eleventh Circuit generally have taken a liberal approach to the qualifications prong of *Daubert* and reserved purported imperfections in an expert's qualifications for cross-examination at trial. *See, e.g., United States v. Williams*, 865 F.3d 1328, 1339-40 (11th Cir. 2017) (affirming admission of expert's testimony over objection that expert lacked background education in science on the basis that the expert's education could be addressed in cross-examination); *Trilink Saw Chain*, 583 F. Supp. 2d at 1304. Dr. Reinhart's lack of a particular board certification, a particular

medical background, or a particular specialized education or are grounds for cross-examination, not exclusion.

## C.   Dr. Reinhart Applied a Reliable and Peer-Reviewed Methodology to Produce His Disclosed Opinions.

To be admissible, an expert's testimony must be "the product of reliable principles and methods." Fed. R. Evid. 702(c). A court assesses the reliability of an expert's methodology by considering:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific community; and (4) whether the technique is generally accepted in the scientific community.

*Kilpatrick*, 613 F.3d at 1335. "Under *Daubert*, 'no single factor is necessarily dispositive of the reliability of a particular expert's testimony.'" *Vigneulle v. Tahsin Indus. Corp. USA*, No. 2:15-cv-02268-RDP, 2018 U.S. Dist. LEXIS 49986, at *6 (N.D. Ala. Mar. 27, 2018) (quoting Fed. R. Evid. 702, advisory committee's note to 2000 amendments). Rather, the court "must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Kilpatrick*, 613 F.3d at 1335.

Dr. Reinhart applied reliable biomechanics, accident reconstruction, and injury causation methodologies to formulate his disclosed opinions. To determine the possible injuries James Johnson could have suffered in the accident, Dr. Reinhart

{DOC# 00692355}                              19

used Injury Causation Analysis. The theory and techniques of Injury Causation Analysis are long-standing and have been subjected to peer review. (Defendants' Exhibit A, p. 11). It has been broadly accepted and used outside of litigation contexts. (*Id.*, pp. 11-12). Several federal district courts have found Injury Causation Analysis to be a reliable methodology. *See Kelham v. CSX Transp., Inc.*, No. 2:12-cv-316, 2015 U.S. Dist. LEXIS 93669, at *16-18 (N.D. Ind. July 17, 2015) (finding opinion based on application of Injury Causation Analysis to be "an analytical strategy based on data and the facts from this case"); *Cooper*, 2011 U.S. Dist. LEXIS 37488, at *19 (finding Injury Causation Analysis to be "a recognized step-wise process that is accepted by the relevant scientific community"); *Hernandez v. Swift Transp. Co.*, No. SA-09-CV-855-XR, 2010 U.S. Dist. LEXIS 82454, at *13-15 (W.D. Tex. Aug. 10, 2010) (admitting injury causation opinion based on Injury Causation Analysis over *Daubert* objection); *Sport*, 2006 U.S. Dist. LEXIS 9801, at *9-11 (finding application of similar process "scientifically sound and based on facts sufficient to satisfy Rule 702's reliability requirement").

### D.      Dr. Reinhart Relied on a Sufficient Factual Basis for His Opinions, Including a Reliable Reconstruction of the Subject Accident.

There is no merit to Plaintiffs' assertion that "Dr. Reinhart relies on speculative, incomplete, and inaccurate facts and data to perform a purported accident reconstruction to obtain his injury causation analysis and biomechanical opinions." (Doc. 77, p. 13) (quotation marks omitted). As set forth in his expert

{DOC# 00692355}                           20

report, Dr. Reinhart reached his opinions in this case using the methodology regularly employed by biomechanical experts in assessing the nature, mechanism, and cause of an occupant's injuries, including whether the accelerations occurring in the accident were sufficient to cause the injury attributed to the subject accident. Dr. Reinhart considered a wide range of evidence about the accident and James Johnson's medical history, including, but not limited to, post-accident photographs, accident reports, medical records, deposition testimony, and witness statements. (Doc. 68-3, pp. 2-3). He utilized comparable trucks and trailers for the reconstructed collision, and he used a surrogate driver equipped with properly-calibrated accelerometers to ascertain the forces and accelerations placed upon the driver's body during the reconstructed accident.[3] Because he used mechanical sensors to ascertain the accelerations placed upon the surrogate driver, he did not need to perform calculations to collect that data.

Plaintiffs contend throughout the third *Daubert* motion that Dr. Reinhart's methodology is unreliable and due to be excluded because it lacked certain factual bases. For example, Plaintiffs assert that all of Dr. Reinhart's opinions should be excluded because he did not personally inspect the vehicles involved in the accident,

---

[3] Dr. Reinhart's opinions in this case are distinguishable from those excluded from trial in *Brown v. Regions Insurance*, Case No. 14-813 (E.D. La. Sept. 7, 2016), because Dr. Reinhart performed a full accident reconstruction with exemplar vehicles to ascertain the likely movements Mr. Johnson's body would have undergone in the subject accident and the accelerations that his body would have experienced.

he did not personally visit the accident scene, and he did not physically examine Mr. Johnson. Plaintiffs provide no authority that an in-person vehicle inspection, in-person scene inspection, or in-person examination of an injured party is required for finding an accident-reconstruction or injury-causation opinion to be admissible. Moreover, Plaintiffs do not explain how an inspection of the vehicles or the scene would have altered the analysis of the subject collision. There is no indication of additional crush damage to either trailer, tire marks on the roadway, or damage to structures around the roadway that could have been ascertained from an in-person inspection. Plaintiffs complain about the lack of "objective speed data", but Massingill testified to travelling at a speed of three to five miles per hour, which is consistent with the speed at which the reconstructed accident occurred. (Doc. 83-1, p. 48; tp. 185, ll. 19-22; tp. 187, ll. 9-16).

Plaintiffs contend that Dr. Reinhart could not rely upon the photographs of the vehicles after the accident because James Johnson testified to Mark Massingill attempting to bend some portion of the tanker trailer back into place. Massingill does not recall doing that. (Doc. 83-1, p. 39; tp. 150, ll. 6-10). Even if Massingill attempted to bend a portion of the trailer back into place, he could not have made any significant change to the sheet metal on Johnson's tanker trailer. (*See* Defendants' Exhibit A, p. 16) (describing the alleged alteration of the trailer as "the replacement of the incidentally damaged, soft metal hazardous materials sign" that

would not have affected "the stiffer metal structures" on the tanker trailer). Therefore, it is wholly speculative to claim that the post-accident photographs are inconsistent in any way with the damage caused in the accident, and Dr. Reinhart's testimony should not be excluded for his reliance upon the photographs.

Plaintiffs make several arguments about Dr. Reinhart "assuming" the weight of the vehicles involved in the accident. Plaintiffs rely in substantial part upon Mr. Johnson's testimony about driving a loaded or partially-loaded trailer, which is inconsistent with the documentary evidence of him receiving a load after the accident. (*See* Doc. 77-5, p. 130, ll. 18-21). Assuming there is some dispute about the weight of each vehicle, Dr. Reinhart applied a presumption in favor of Plaintiffs' position by using an unloaded tanker trailer that would absorb less of the impact from the box trailer and result in more force being placed upon the surrogate driver. (*See* Defendants' Exhibit A, p. 16). Furthermore, this "missing variable" argument is the exact type of argument the Eleventh Circuit found insufficient to demand exclusion of an expert's analysis in *Quiet Technology DC-8, Inc.*, 326 F.3d at 1346. Accordingly, any concerns over weight discrepancies are insufficient to warrant excluding Dr. Reinhart's testimony from trial.

As for the lack of pre-accident medical records, Dr. Reinhart has explained that the produced medical records are "more than sufficient for use in an Injury Causation Analysis." (Defendants' Exhibit A, p. 15). Plaintiffs have not identified

or put forth any medical records that could alter Dr. Reinhart's opinion that Mr. Johnson suffered from degenerative disc disease in the lumbar spine unrelated to the subject accident. Indeed, Plaintiffs' treating physicians cannot identify any pre-accident medical records to support their attribution of the spinal impairments to the subject accident. Defendants cannot be deprived of the right to put forth a qualified expert to address the clear holes in Plaintiffs' case based upon the lack of documented pre-accident medical care.[4]

### E.    Dr. Reinhart Reliably Applied Injury Causation Analysis to Find that the Accident at Issue Could Not Have Caused an Acute Lumbar Spinal Injury as Claimed by Plaintiffs.

Dr. Reinhart reliably applied every step of Injury Causation Analysis to assess the likelihood that the subject accident caused an acute lumbar spine injury as claimed by Plaintiffs. He assessed the accident from available photographs, accident reports, and driver testimony. Using that information, he performed a reconstruction of the accident with exemplar vehicles to ascertain the accelerations that Mr. Johnson's body would have experienced during the accident. Using data from the reconstruction and principles of occupant kinematics, Dr. Reinhart assessed how Mr.

---

[4] To the extent Plaintiffs complain about the lack of pre-accident medical records, Mr. Johnson bears some responsibility for refusing to identify any medical providers who treated him for the injuries in his discovery responses. (Doc. 83-1, pp. 60-61) (objection to interrogatory number 13). Likewise, he refused to identify any medical providers who treated him before the subject accident on the basis that such discovery was overly broad and unduly burdensome. (*Id.*, p. 58) (objection to interrogatory number 4). Plaintiffs should not be permitted to use Mr. Johnson's refusal to answer relevant discovery about his medical history to justify the exclusion of a qualified expert for lacking information about said medical history.

{DOC# 00692355}                                24

Johnson's body would have moved during the accident and explained the "jostling type motion" that Johnson attributed to multiple collisions between the trailers. (Doc. 68-3, pp. 16-17). Thereafter, Dr. Reinhart reviewed biomechanical literature and data from the reconstruction to explain why the motions and accelerations likely experienced by Mr. Johnson were insufficient to cause an acute lumbar spine injury. (*Id.*, pp. 17-21, 23). Dr. Reinhart reviewed Mr. Johnson's medical records and found the evidence therein to be consistent with pre-existing degenerative disc disease. (*Id.*, p. 9). There is no analytical gap whatsoever between Dr. Reinhart's methodology and the opinions asserted in his Rule 26 report.

Plaintiffs criticize Dr. Reinhart for relying upon statistical, epidemiological studies from "different types of accidents." (Doc. 77, p. 18). In doing so, Plaintiffs completely mischaracterize the purpose of the epidemiological review and the fundamental similarities between the low-speed accidents reviewed in those studies and the subject accident. Dr. Reinhart discussed the epidemiological literature regarding low-speed, rear-end collisions to show that there is insufficient scientific evidence to support a causal relationship between isolated, low-speed accidents and spinal disc herniations based upon thousands of human volunteer studies and real-world accidents. (*See* Doc. 68-3, pp. 20-21). Studies involving accidents with passenger vehicles are relevant to determining the likelihood of spinal injury from the subject accident between two tractor-trailers because "automobiles and tractor-

trailers, regardless of their size and weight, follow the same laws of physics." (Defendants' Exhibit A, p. 17).

Plaintiffs also criticize Dr. Reinhart's Rule 26 disclosure for being similar to a Rule 26 disclosure in another case. This is a meritless basis for claiming Dr. Reinhart's methodology or opinions are unreliable. Rule 26 does not impose a creative-writing requirement on retained experts, and the Court should not impose an *ad hoc* creative-writing requirement to Dr. Reinhart's report through *Daubert*'s reliability prong. *See generally* Fed. R. Civ. P. 26(a)(2)(B). Additionally, from Plaintiff's own comparison, it appears that the two cases involved similar claimed spinal injuries and similar rear-end collisions, so analytical similarities are to be expected. (*See* Doc. 77, pp. 2-3). Plaintiffs focus solely on a 2-page conclusion section of a 24-page report, and, thus, do not provide a comprehensive basis for the Court to ascertain the similarity (or lack thereof) between the reports. This red herring should be disregarded entirely.

F.  **Dr. Reinhart's Injury Causation Analysis and Biomechanical Opinions are Helpful to the Jury Because They Address Matters Beyond the Knowledge of the Average Layperson.**

Rule 702 requires an expert's opinions to be helpful to the jury. This prong of Rule 702 addresses two concerns. First, expert testimony must relate to an issue in the case. *Daubert*, 509 U.S. at 591 (explaining that expert testimony not relating to a disputed issue "is not relevant and, ergo, non-helpful"). Second, expert testimony

must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.*

Dr. Reinhart's testimony clearly would be helpful to the jury in analyzing the disputed issues in this case. Here, we have a complex interaction of two vehicles, their motion, and their occupants' motion, which requires the application of physics, engineering, and medicine principles. (Defendants' Exhibit A, p. 14). The biomechanical, kinematics, and medicine issues discussed by Dr. Reinhart are not within the common knowledge of laypersons. (*Id.*). It clearly is relevant whether the movements and forces associated with the accident caused the injuries attributed to the accident by Mr. Johnson, and understanding how spinal injuries result from specific interactions is well outside the basic or common knowledge of the average juror. This case presents especially difficult causation issues for the jury because Mr. Johnson claims that lumbar spine injuries attributable to the accident required a lumbar fusion surgery and now prevent him from working in any medium or heavy duty employment, **even though he continued to work as a commercial driver for ten months following the accident**. Because Dr. Reinhart's opinions address a disputed issue in the case, are tied to the facts of the case, and address matters outside the knowledge of a layperson, his opinions will be helpful to the jury and are due to be admitted under Rule 702.

## III.   CONCLUSION

For the reasons explained above, Dr. Reinhart is a well-qualified expert to offer opinions on accident reconstruction, biomechanics, occupant kinematics, and injury causation. Dr. Reinhart reliably applied a peer-reviewed methodology based upon these specialties to determine that the accelerations experienced by Plaintiff James Johnson were insufficient to cause the alleged traumatic lumbar spine injuries that Mr. Johnson attributes to the subject accident. Therefore, the Court should deny Plaintiffs' motions *in limine* against Dr. Reinhart (Docs. 67, 73, & 76) in their entirety.

Respectfully submitted,

*/s/ Thomas L. Oliver, II*
Thomas L. Oliver, II (ASB-3153-R53T)
Robert A. Arnwine, Jr. (ASB-5964-B65A)
Dennis O. Vann, Jr. (ASB-5854-I61U)
Attorneys for Defendants

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216
Telephone:   (205) 822-2006
Facsimile:   (205) 822-2057
E-mail:   toliver@carrallison.com
          rarnwine@carrallison.com
          dvann@carrallison.com

{DOC# 00692355}                    28

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2020, I have served a copy of the above and foregoing on counsel for all parties by:

_____Facsimile transmission;
_____Hand Delivery;
_____Electronic Mail;
_____Placing a copy of same in the United States Mail, properly
           addressed and first class postage prepaid to; and/or
___X___Using the Alafile or CM/ECF system which will send
           notifications of such to the following:

Eric Tiebauer
**The Tiebauer Law Offices, LLC**
P.O. Box 1421
4363 Highway 45 North
Waynesboro, Mississippi 39367
Telephone:  (601) 735-5222
Facsimile:  (601) 735-5008

Jason M. Baer
**Baer Law, LLC**
3000 Kingman Street
Suite 200
Metairie, LA 70006
Telephone:  (504) 372-0111
Facsimile:  (504) 372-0151

                                        *s/ Thomas L. Oliver, II*
                                        Of Counsel

{DOC# 00692355}                    29