FILED

2021 Feb-04  PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JAMES JOHNSON, JR., and** | } |
| **ERICKA JOHNSON,** | } |
| | } |
| | } |
| **Plaintiffs,** | } |
| | } |
| | } **Case No.:  2:18-cv-01835-MHH** |
| | } |
| **v.** | } |
| | } |
| | } |
| **ABF FREIGHT SYSTEM, INC.** | |
| **and MARK EUGENE** | |
| **MASSINGILL,** | |
| | |
| **Defendants.** | |

## SUPPLEMENTAL MEMORANDUM OPINION REGARDING DR. REINHART'S EXPERT TESTIMONY

The parties attempted to resolve this truck accident case in mediation before

a district judge.  (Doc. 118).  The mediation did not produce a settlement agreement.

The parties now are preparing for trial.  Because the defendants have admitted that

Mr. Massingill caused the collision between his truck and the truck that Mr. Johnson

1

was driving, a jury will not have to decide accident causation but will have to decide injury causation and damages.[1]

To help the parties prepare for their mediation and their discussion of injury causation, the Court held a hearing and ruled on Mr. Johnson's motion to exclude from trial the defendants' accident reconstruction expert, Dr. Lars Reinhart. (Docs. 114, 115). In the Court's December 11, 2020 memorandum opinion, the Court denied Mr. Johnson's motion to exclude Dr. Reinhart's opinions regarding biomechanics and accident reconstruction but granted Mr. Johnson's motion with respect to Dr. Reinhart's opinions concerning medical causation. (Doc. 115). This memorandum opinion supplements the Court's analysis of Dr. Reinhart's medical causation opinion.

In its December 2020 opinion, the Court found that "Dr. Reinhart, as an emergency room physician, is not qualified to interpret images of Mr. Johnson's spine and offer his opinion that the radiological findings 'were consistent with preexisting degenerative changes and not indicative of any acute traumatic injury as a result of the subject collision.' Dr. Reinhart does not have a background in radiology or in orthopedics that would qualify him to offer opinions about preexisting degenerative conditions in Mr. Johnson's spine." (Doc. 115, pp. 6-7)

---

[1] Mr. Johnson has moved for summary judgment on injury causation. (Doc. 81). The Court has not decided that motion yet.

(quoting Doc. 114, pp. 24–25).  The record reflects that Dr. Reinhart leaned heavily on the work of others to develop his injury causation opinion concerning Mr. Johnson's radiological evidence.  In his expert report, Dr. Reinhart stated that he reviewed Mr. Johnson's x-rays "by myself and in consultation with" a radiologist. (Doc. 77-6, p. 9).  The record demonstrates that a radiologist and a nurse evaluated Mr. Johnson's medical evidence, and Dr. Reinhart simply reviewed and presented their work.

Dr. Reinhart's bills for his expert services, (Doc. 77-5, pp. 283, 285, 287-89, 293, 296), indicate that a nurse reviewed and summarized Mr. Johnson's medical records; that is not Dr. Reinhart's work.  (*See* Doc. 77-5, p. 283, 285, 289, 293, 296). The nurse's summaries appear at pages 6-9 of Dr. Reinhart's expert report.  (Doc. 77-6, pp. 6-9).  Dr. Reinhart spent less than one hour reviewing Mr. Johnson's medical records before the August 2019 accident reconstruction in this case.  (Doc. 77-5, p. 287).  The radiologist Dr. Reinhart hired spent six hours reviewing and evaluating the diagnostic evidence.  (Doc. 77-5, pp. 287-88).

Dr. Reinhart's work relating to injury causation stands in contrast to his work developing his opinion regarding Mr. Johnson's movement within the cab of his truck during the collision.  Dr. Reinhart participated in the accident reconstruction, and he provided the relevant measurements concerning that reconstruction, so he did the work that equips him to provide an opinion regarding accident reconstruction.

As part of his accident reconstruction opinion, and consistent with his expertise in engineering, he can speak to the ways in which the spine usually moves in a low-impact collision like the one in this case.  But he cannot simply restate the opinions of a board-certified radiologist who he hired to provide an expert analysis of Mr. Johnsons' diagnostic tests.

In addition, jurors could be confused by Dr. Reinhart's medical causation opinion because his opinion is, at best, nuanced.  While Dr. Reinhart opines that Mr. Johnson's x-ray evidence does not suggest an injury caused by the collision with Mr. Massingill, Dr. Reinhart acknowledges in his report that Mr. Johnson was diagnosed with a sprain of all major segments of his spine immediately after the accident, and he reported no prior history of back, neck, or shoulder pain.  (Doc. 77-6, pp. 5-6). Dr. Reinhart explained that this is a common diagnosis after a low-speed collision like this one.  (Doc. 77-6, p. 23).  Over a twelve-month period at a physician's direction, Mr. Johnson underwent 46 chiropractic treatments.  Midway through treatment, an MRI revealed several issues in Mr. Johnson's lumbar spine.  Between April and June 2017, Mr. Johnson received three epidural steroid injections.  (Doc. 77-6, pp. 6-7).  Again, Dr. Reinhart explained that this is not out of the ordinary. (Doc. 77-6, p. 23).  So, even discounting Mr. Johnson's November 2017 surgery, there is evidence of injury causation from Mr. Johnson's treating physicians with which Dr. Reinhart does not seem to take issue.  But still, he opines that "the

acceleration and movements that Mr. Johnson experienced during the subject accident were well within his tolerable physiologic levels and not significant enough to be causal for his claimed injuries," (Doc. 77-6, p. 23, ¶ 4), suggesting that Mr. Johnson suffered no injury at all.

And Dr. Reinhart does not explain what he sees in the radiological evidence that allows him to differentiate pre-existing degenerative disease from traumatic injury. His opinion is simply this: "all [of the imaging] findings were consistent with pre-existing degenerative changes and not indicative of any acute, traumatic injury as a result of the subject collision." (Doc. 77-6, p. 9). That's it. There is no explanation for that opinion in terms of what he saw in the x-rays that indicated to him that Mr. Johnson had pre-existing degenerative changes. An orthopedic expert who did her homework and thoroughly examined Mr. Johnson's radiological records would offer an explanation. She might look at something like the "mild spurring at L4" mentioned at Doc. 77-6, p. 6, and explain that spurring is a spinal feature that usually develops over time and typically is associated with osteoarthritis, not acute trauma.[2] There is no such discussion of the medical evidence in Dr. Reinhart's expert report. His bald, one-sentence statement that all x-ray/MRI findings are consistent with pre-existing degenerative changes is inadmissible.

---

[2]   BONE SPURS, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/bone-spurs/symptoms-causes/syc-20370212 (last visited Jan. 25, 2021).

To facilitate trial preparation, by Wednesday, February 10, 2021 at 3:00 p.m.

CST, the parties shall jointly propose a pre-trial briefing schedule.

**DONE** and **ORDERED** this February 4, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE