UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES JOHNSON, JR., and ERICKA JOHNSON,** | } } } } |
| **Plaintiffs,** | } } } |
| v. | Case No.: 2:18-cv-01835-MHH } } } |
| **ABF FREIGHT SYSTEM, INC. and MARK EUGENE MASSINGILL,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

The Johnsons have asked the Court to find that they have established by uncontroverted evidence that Mr. Johnson's accident with Mr. Massingill caused the back injury for which Mr. Johnson seeks damages, so that they do not have to prove injury causation at trial. (Doc. 81). Mr. Johnson argues that uncontroverted evidence provided by three physicians who treated him establishes conclusively that

1

his spine is injured; his spinal injury and the treatment he received was the result of the collision at issue; and his spinal surgery was medically proper and justified (i.e., within the standard of care for a spine surgeon). (Doc. 82, p. 2). At first blush, the plaintiffs' argument seems persuasive. Uncontroverted evidence seems to be the quintessential recipe for summary judgment. But the record in this case is not that simple.[1]

In support of their request that the Court hold that they have established injury causation by uncontroverted evidence, the Johnsons rely on two affidavits and a deposition. Dr. Peter Liechty, a board-certified neurosurgeon who examined Mr. Johnson in November 2017 "regarding his continuing pain in his low back, which persisted despite comprehensive conservative care and pain management treatments," provided an affidavit concerning his evaluation and treatment of Mr. Johnson. (Doc. 82-7, p. 1, ¶¶ 3, 4, 7). Dr. Liechty stated that Mr. Johnson's lower back pain "was not degenerative in nature," that Mr. Johnson "had no significant medical history or issues in his lower back prior to the October 26, 2016 collision,"

---

[1] Under Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). Accordingly, in resolving the plaintiffs' motion for partial summary judgment, the Court views the evidence in the light most favorable to ABF and Mr. Massingill.

and that "Mr. Johnson's lumbar injuries at L3/4 and L5/S1 were, more likely than not, caused by the 18-wheeler collision on October 26, 2016." (Doc. 82-7, p. 2, ¶¶ 7b, 7c, 8). Right away, the assumptions underlying Mr. Johnson's argument for a conclusive finding on medical causation become apparent; Dr. Liechty's opinion regarding the source of Mr. Johnson's back pain rests, at least in part, on medical history information that Mr. Johnson supplied to Dr. Liechty. If a jury determines that the medical history information is incorrect, then jurors may discount Dr. Liechty's opinion.[2]

What's more, Dr. Spain Hodges, an orthopedic spine surgeon who examined Mr. Johnson, (Doc. 82-9, pp. 9–10), testified in his deposition that Mr. Johnson presented "for evaluation of lower back pain which he reported began following a motor vehicle collision in November, 2016." (Doc. 82-9, p. 15). Like Dr. Liechty, Dr. Hodges began his evaluation mindful of Mr. Johnson's attribution of his back pain to the accident. Before Mr. Johnson visited Dr. Hodges, Mr. Johnson received chiropractic treatment and three epidural injections and had "reported some mild relief from epidural injections, but they did not seem to help long term." (Doc. 82-9, p. 15). During his examination of Mr. Johnson, Dr. Hodges was able to

---

[2] The Court will consider separately the defendants' motion to exclude from trial the opinions that Dr. Liechty and Mr. Johnson's other treating physicians have offered concerning the cause of his back injury. (Doc. 93). For purposes of this opinion, the Court focuses on the plaintiffs' effort to establish injury causation before trial.

3

"reproduce[]" pain "with range of motion in [Mr. Johnson's] back." (Doc. 82-9, pp. 16–17).  Based on his review of Mr. Johnson's x-rays, Dr. Hodges noted that Mr. Johnson had "a small protrusion at L4-5 and at L5-S1, with some mild disc space narrowing at L3-4, but no evidence of nerve compression." (Doc. 82-9, p. 22).

When asked about the L3-4 disc narrowing, Dr. Hodges testified that this was "dehydration" at L3-4, which "essentially says the disc is starting to, I guess, effectively collapse a little bit, you know, just showing some signs of wear and tear." (Doc. 82-9, p. 23).  He explained that disc dehydration is "typically age related.  If you have an acute injury, that can later cause some injury to the disc, which can cause it to dehydrate" but "in this setting, I would say it's probably a degenerative process." (Doc. 82-9, pp. 23–24; *see also* Doc. 82-9, p. 27).  After reviewing Mr. Johnson's film studies and examining Mr. Johnson, Dr. Hodges "did not, at that point, advise him to have surgery.  You know we'd talked about potentially some other medications, because he had already tried, I believe, the chiropractic treatment and the epidural injections.  There wasn't a whole lot that I felt that I could offer him at that time." (Doc. 82-9, p. 25).  When asked "you didn't recommend surgery at all?" Dr. Hodges replied, "I did not." (Doc. 82-9, p. 25).[3]

---

[3] Dr. John Hamide, a fellowship-trained interventional radiologist, also provided an affidavit to Mr. Johnson. (Doc. 82-8).  Dr. Hamide performed a lumbar discogram, a diagnostic study, on Mr. Johnson's back at the L3-4, L4-5, and L5-S1 levels. (Doc. 82-8, p. 1, ¶¶ 5, 6).  Dr. Hamide concluded that Mr. Johnson had lumbar injuries at the L4-5 and L5-S1 levels. (Doc. 82-8, p. 2, ¶

4

Dr. Hodges testified that "[b]ased on [Mr. Johnson's] complaint that he had no pain prior and complained of pain after" the accident, his back injury likely was caused by the collision. (Doc. 82-9, p. 32). But Dr. Hodges stated: "there's no way to know if they're accurate other than just taking his word for it." (Doc. 82-9, p. 33). So, we return to credibility, and credibility is a question for a jury to resolve, not a court. *A.L. ex rel. D.L. v. Walt Disney Parks and Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) ("The court does not weigh conflicting evidence or determine the credibility of witnesses.") (citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012)).

Given the credibility issues underlying the evidence on which the plaintiffs rely, the Court denies the plaintiffs' request for a conclusive finding that Mr. Johnson's accident with Mr. Massingill caused Mr. Johnson's back injury.

**DONE** and **ORDERED** this March 10, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

10). Dr. Hamide stated that "Mr. Johnson's injuries were more likely than not caused by the trauma that occurred on or about October 26, 2016" and that the injuries "were more likely than not caused by an acute trauma rather than from degenerative issues." (Doc. 82-8, p. 2, ¶¶ 11, 12). In the report that he prepared after he performed the lumbar discogram, Dr. Hamide stated that his key impression was an "[a]bnormal nucleogram at L4-5 and L5-S1 with concordant pain responses appreciated." (Doc. 82-8, p. 3).