# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES JOHNSON, JR., and** | } | |
| **ERICKA JOHNSON,** | } | |
| | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| | } | Case No.: 2:18-cv-01835-MHH |
| **v.** | } | |
| | } | |
| | } | |
| **ABF FREIGHT SYSTEM, INC. and MARK EUGENE MASSINGILL,** | | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Defendant Mark Massingill has asked the Court to enter judgment in his favor on Mr. Johnson's wantonness claim against him. (Doc. 83). The Court denies Mr. Massingill's motion.

1

## Summary Judgment Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The Court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). Accordingly, the Court views the evidence in the light most favorable to Mr. Johnson.

## Analysis

For a wantonness claim to proceed to trial under Alabama law, a plaintiff must demonstrate that there are disputed questions of fact regarding the defendant's knowledge of the dangers associated with particular conduct and knowledge that injury likely would result from that conduct. *Tolbert v. Tolbert*, 903 So. 2d 103, 114–15 (Ala. 2004). The Alabama Legislature has defined wantonness as "[c]onduct which is carried on with a reckless disregard of the rights and safety of others." ALA. CODE § 6-11-20.

In *Ex parte Capstone Bldg. Corp.*, the Alabama Supreme Court explained that, to prove wantonness, a plaintiff does not have to establish that the defendant acted with the conscious intent to cause injury. 96 So. 3d 77 (Ala. 2012). Quoting its decision in *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250 (Ala. 1998), the Supreme Court stated:

> "'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitted to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff. *Joseph v. Staggs*, 519 So. 2d 952 (Ala. 1988).… Certain language in *Lynn Strickland* [*Sales & Service, Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145 (Ala. 1987),] suggested that a specific design or intent to injure the plaintiff was an element of a claim for wantonness. To the extent that *Lynn Strickland*

3

deviates from the statutory definition of wantonness, as followed by this Court, it is hereby overruled."

*Ex parte Capstone Bldg. Corp.*, 96 So. 3d at 84.

Mr. Johnson has presented evidence from which a jury could conclude that Mr. Massingill acted with a reckless disregard for Mr. Johnson's safety. As the Court recounted in its first summary judgment opinion in this case, the relevant facts relating to the collision between Mr. Massingill's truck and Mr. Johnson's truck are undisputed. The Court stated:

> Here, the undisputed evidence establishes that Mr. Massingill created the circumstances that caused his accident with Mr. Johnson through an unforced error. Mr. Massingill chose to pull his truck into an intersection controlled by a traffic light while the lane into which he planned to turn was occupied, causing him to stop his truck and block the intersection. (Doc. 53-1, pp. 121, 132). When the light turned from green to red, Mr. Massingill could not back up, so he had to pull forward. As he completed his left turn, Mr. Massingill tried to maneuver his truck around Mr. Johnson's truck which was stopped in the left lane at a railroad crossing, but he struck Mr. Johnson's truck as he pulled into the right lane. (Doc. 53-1, pp. 121–23, 125–26, 133, 136, 147–48). Mr. Massingill admitted in his deposition that he "could have stopped . . . and waited before making the left turn," but he "chose to make the left turn hoping [to] make it into the right lane." (Doc. 37-1, p. 126). Additionally, Mr. Massingill stated that he knew Mr. Johnson had to stop at the railroad tracks just beyond the intersection because Mr. Johnson was driving a "tanker truck." (Doc. 53-1, p. 122).

(Doc. 57, pp. 3-4).

4

In his deposition, Mr. Massingill testified that he was familiar with the intersection where the collision occurred because he travelled it four days per week. (Doc. 53-1, pp. 104, 128). Mr. Massingill provided the following testimony:

> Q: Do you believe that you, sir, while you were driving an ABF commercial vehicle on October 26, 2016, were at fault for the collision?
>
> A: Yes.
>
> Q: Do you believe that on October 26, 2016, that you, as a professional truck driver, did everything that you could have done to avoid the collision?
>
> A: No.
>
> Q: In other words, you could have taken action that would have prevented the October 26, 2016, collision, with Mr. Johnson, but you chose to make the left turn, correct?
>
> A: Correct.

(Doc. 53-1, p. 84).

> Q: Okay. Was [Mr. Johnson] at a complete stop before you made the turn?
>
> A: Yes.
>
> Q: Okay. In other words, you don't disagree with Mr. Johnson's testimony that Mr. Johnson was at a complete stop before the impact, correct?
>
> A: Correct.
>
> Q: And you testified earlier that you could have stopped instead of making -- and waited before making the left turn, correct?
>
> A: I could have, yes.

5

>   Q:   Okay. But you chose to make the left turn hoping you could make it into the right lane, correct?
>
>   A:   I believe I could, yes.
>
>   Q:   That was your choice, correct?
>
>   A:   Yeah.

(Doc. 53-1, p. 126). Mr. Massingill turned left onto Avenue W from a two-way road that is two lanes wide in each direction. (Doc. 53-1, pp. 128–29). Importantly, Mr. Massingill testified that he knew that Mr. Johnson would have to stop at the railroad tracks just beyond the Avenue W intersection before he could proceed on Avenue W because that was a rule for tanker trucks like the one Mr. Johnson was driving. (Doc. 53-1, p. 122; *see* Doc. 53-1, p. 291).

Alabama law required a commercial driver like Mr. Massingill to wait to enter the intersection until there was "sufficient space on the other side of the intersection . . . to accommodate the vehicle he . . . is operating without obstructing the passage of other vehicles . . . ." ALA. CODE § 32-5A-61. By his own admission, Mr. Massingill did not wait to enter the Avenue W intersection until he knew there would be sufficient space on Avenue W to accommodate his tractor trailer without obstructing the passage of other vehicles. Mr. Massingill testified that he had to come to a complete stop in the middle of the intersection because Mr. Johnson was stopped at the railroad tracks ahead of him. Reasonable jurors could infer that if Mr. Massingill had believed there was enough space to pull into the right lane beside Mr.

6

Johnson, Mr. Massingill would not have stopped his truck in the middle of the intersection but instead would have completed his turn into the right lane on Avenue W and waited beside Mr. Johnson at the train tracks. Mr. Massingill was forced to move his tuck out of the intersection because another truck was "coming from the other side." (Doc. 53-1, p. 136). Viewing the evidence in the light most favorable to Mr. Johnson, Mr. Johnson has demonstrated that Mr. Massingill knew that he was creating a hazardous situation when he pulled into the intersection before Mr. Johnson was able to clear the railroad tracks on Avenue W, but Mr. Massingill recklessly chose to turn anyway.

The evidence, viewed in the light most favorable to Mr. Johnson, allows Mr. Johnson to prove that Mr. Massingill knew that the risk he created by pulling into the intersection behind another large truck was likely to cause an injury. Mr. Massingill testified that violating the Federal Motor Carrier safety regulations for commercial truck drivers can lead to injury to other drivers. (Doc. 53-1, pp. 89–90). He acknowledged that cutting a left turn too short violates those regulations. (Doc. 53-1, pp. 93–94). ABF's "Safe Driving" instructions state: "Aggressive drivers can be dangerous drivers. They put themselves and other drivers at risk with their unsafe driving." (Doc. 63-1, p. 293). The ABF instructions list among "Possible Lifesavers": "Never force the right of way." (Doc. 53-1, p. 294). The instructions provide that "[a]t an intersection of streets . . . a safe driver will never demand the

7

right of way." (Doc. 53-1, p. 289).  With respect to left turns, the instructions state: "Remember that the trailer will off-track behind the tractor, which means adequate clearance must be allowed for the trailer."  (Doc. 53-1, p. 290; *see also* Doc. 53-1, p. 95).[1]

Mr. Massingill had been an ABF driver for more than a year when his accident with Mr. Johnson occurred.  Jurors reasonably may infer from the fact that four large trucks were in, or approaching, the intersection where Mr. Massingill turned that there was heavy truck traffic at that intersection.  Mr. Massingill knew that he was creating a risk for himself and others when he pulled into the intersection without allowing for adequate clearance on Avenue W.

Mr. Massingill testified that he thought he would be able to turn around the rear of Mr. Johnson's truck and pull into the right lane beside Mr. Johnson, but Mr. Massingill also acknowledged that when he pulled into the intersection, Mr. Johnson was just ahead of him, beginning his turn; he knew Mr. Johnson would have to stop at the railroad tracks; he planned to follow directly behind Mr. Johnson; he had to stop in the middle of the road to accommodate Mr. Johnson's stop at the railroad tracks; when Mr. Johnson's stop was prolonged because a train was approaching, Mr. Massingill initially planned to clear the intersection by backing up, but another

---

[1] Mr. Massingill had read the ABF handbook cover to cover.  (Doc. 53-1, p. 73).

truck had blocked his path, so he tried to pull into the right lane beside Mr. Johnson, but he had to pull onto the curb to make the turn; and he knew that once on the curb, he would have to avoid hitting the power and light polls on the curb. (Doc. 53-1, pp. 122–26, 136, 139–42, 176).

Jurors may believe that Mr. Massingill thought he had enough room to pull into the right lane beside Mr. Johnson, but jurors also reasonably may infer from this evidence that Mr. Massingill knew he did not have enough space to turn beside Mr. Johnson because his first solution to his predicament was to back up, and his second solution required hm to pull onto a curb to try to get into the right lane beside Mr. Johnson. Mr. Massingill argues that, at most, he "inadvertently caused this accident by misjudging the space he had to turn onto Avenue W and clear the intersection." (Doc. 86, p. 13). The evidence viewed in the light most favorable to Mr. Johnson permits a jury to find that Mr. Massingill acted with a reckless disregard for Mr. Johnson's safety.[2]

---

[2] Mr. Massingill argues that the Alabama Supreme Court's decision in *Ex parte Essary*, 992 So. 2d 5 (Ala. 2007), entitles him to judgment. (Doc. 86, p. 10). In *Ex parte Essary*, the Alabama Supreme Court concluded that an automobile driver who attempted to cross an intersection between two moving vehicles did not consciously engage in conduct that was likely to, or would probably, result in injury. 992 So. 2d at 12. The driver's "negligent failure to exercise good judgment" did not rise "to a wanton act constituting reckless indifference to a known danger likely to inflict injury." *Ex parte Essary*, 992 So. 2d at 12. Relying on its decision in *Wilson v. Cuevas*, 420 So. 2d 62 (Ala. 1982), the Alabama Supreme Court in *Essary* found that the driver simply made an error in judgment, and the driver's mistake could not constitute wanton conduct. 992 So. 2d at 12. The primary threat is *Essary* was to the driver himself, not to others.

## Conclusion

For the reasons above, the Court denies Mr. Massingill's partial motion for summary judgment on Mr. Johnson's wantonness claims against him.

**DONE** and **ORDERED** this April 8, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

Our facts are different. Mr. Massingill had a commercial driver's license and was operating a tractor trailer, not a car. (Doc. 53-1, p. 10). To maintain his commercial license, he had to comply with federal regulations. He also had to abide by his employer's safety requirements. Both the regulations and ABF's safety rules are designed to protect other drivers, and both prohibited Mr. Massingill from entering the intersection when he knew that the truck he was following would have to stop just beyond the intersection. In *Wilson*, the Alabama Supreme Court concluded that while the driver's conduct in that case in pulling into an intersection did not rise to the level of wantonness, "under other circumstances, [the conduct] could constitute wantonness . . . ." *Wilson*, 420 So. 2d at 64. The Alabama Supreme Court also noted that "[c]oncerning wantonness . . . '[e]ach case is bound by its material facts.'" *Wilson*, 420 So. 2d at 64 (quoting *Simon v. Goodman*, 13 So. 2d 679, 680 (Ala. 1943)). The facts of this case present a jury question concerning Mr. Massingill's alleged wanton conduct.