# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JAMES JOHNSON, JR.,** and **ERICKA JOHNSON,** | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| **ABF FREIGHT SYSTEM, INC.,** and **MARK EUGENE MASSINGILL,** | ) ) ) ) ) ) |
| Defendants. | ) |

Case No.: 2:18-cv-01835-MHH

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN *LIMINE* TO EXCLUDE NANCY MICHALSKI'S EXPERT TESTIMONY

---

COME NOW Defendants **ABF Freight System, Inc.** and **Mark Eugene Massingill**, by and through the undersigned counsel, and submit the following brief in opposition to Plaintiffs' Motion *in Limine* seeking to exclude all expert opinions by Nancy Michalski (Doc. 137).

Ms. Michalski is a medical billing expert, certified legal nurse consultant, and medical bill auditor. (Exhibit A at pp. 2, 4; ¶¶ 1, 6). She was retained to conduct a forensic analysis of James Johnson's medical bills and ascertain whether his medical expenses were reasonable in amount for the services provided. As discussed in detail

{DOC# 00724637}

below, Ms. Michalski is clearly qualified as a medical billing audit and coding expert. Her methodology and references are relevant, peer-reviewed, reliable, and regularly used in the medical billing community. Her testimony will be helpful to the jury in ascertaining whether James Johnson's claimed medical expenses are reasonable. All *Daubert* requirements regarding Ms. Michalski are satisfied, and Plaintiffs' Motion in *Limine* to Exclude Michalski (Doc. 137) is due to be denied.

## I.     BACKGROUND

Defendants retained Nancy Michalski to provide a medical bill audit of the charges for services rendered to Plaintiff James Johnson and to testify about the reasonable value of those services. The objective of her audit was to analyze the charges of past medical services rendered to determine the reasonable market value for the same services, in the same year, and in the same community for all of the past medical treatment that Plaintiffs have attributed to the subject accident. She will testify to the reasonable value and costs associated with Plaintiff James Johnson's past medical care.

Ms. Michalski is qualified from her education, training, and experience to analyze medical billing and to render opinions as a billing auditor. She obtained a degree in nursing from the University of Wisconsin-Madison and has been a registered nurse since 1983. (Exhibit A at p. 4; ¶ 6).[1] She is certified as a legal nurse

---

[1] Citations to Exhibit A refer to the electronically-generated pagination generated by ECF.

{DOC# 00724637}                                            2

consultant and in healthcare management development. (*Id.*). She is an experienced medical bill auditor and analyst with over 35 years of experience in the medical billing industry. From 1984 to 2001, Ms. Michalski was the co-founder and director of the medical billing department at the Outpatient Surgical Medical Unit in Santa Monica, California. (*Id.*). In that position, she was responsible for establishing medical charges for the facility and negotiating third-party payer contracts, as well as medical billing and collections for over 2,000 surgeries and 5,000 patient visits per year. (*Id.*).

From 2000 to 2012, Ms. Michalski was the founder and chief executive officer of a national consulting firm that provided medical record reviews, medical bill audits, and life care plans to law firms, insurance companies, and corporations. (Exhibit A at p. 217). She formed Elevate Services, Inc. in 2012, where she performs medical record reviews and medical bill audits nationwide. (*Id.*). Ms. Michalski has testified as a medical bill auditor in 107 trials and 478 depositions. (*Id.* at p. 5; ¶ 7).

Ms. Michalski uses a three-step process to review and audit charges in order to determine the reasonable value of the medical services provided to an individual. (*Id.* at p. 5; ¶ 8). "First, each medical charge is audited to apply all applicable medical billing and coding rules, standards, and federal regulations based on [the] category of care." (*Id.*). "Second, geographic-specific pricing is applied to determine the reasonable marketplace value for the same services within the same community

within the same year." (*Id.*). "Third, a market analysis is conducted of the local medical community for similar services." (*Id.*). Dr. Gerald Anderson, a professor of health policy and management at Johns Hopkins University, has peer reviewed Ms. Michalski's methodology. (*See id.* at p. 4; ¶ 5 & pp. 214-15).

In this case, Ms. Michalski assessed the reasonable value of past medical services provided to Plaintiff James Johnson. (Exhibit A at p. 14). She provided opinions regarding "the reasonable marketplace value for the same services, in the same year, in the same communities, Jefferson Parish, Louisiana, and Jefferson County, Alabama, and surrounding areas, for all of the past medical treatment provided." (*Id.*). Michalski determined that the reasonable value of the past medical services, for which Plaintiffs seek **$395,743.96** in damages, was **$92,519.09**. (*Id.* at pp. 14-15).

Michalski determined that the reasonable value of the outpatient surgery center services provided by Crescent View Surgery Center for Mr. Johnson's lumbar fusion surgery was $13,593.76, not $243,300. (*Id.* at p. 16). Michalski applied CPT codes and ambulatory payment classification (APC) codes issued by the American Hospital Directory to determine the reasonable value of the services provided by Crescent View. (*Id.* at p. 8; ¶ 9). She validated the results "by comparing the APC codes to data published by the American Hospital Directory for other facilities in the community for the same APC code in the same year." (*Id.*). Michalski testified that

an outpatient surgery center such as Crescent View would have lower input costs than an in-patient hospital providing similar services. (Exhibit B at pp. 66, 74).[2] Thus, an outpatient center typically would charge lower rates than a hospital for the same services. (*Id.* at p. 66). Nevertheless, Crescent View's charges are orders of magnitude higher than the typical facility charges for the surgery performed on Mr. Johnson. (*See* Exhibit A at pp. 22-23) (outlining average charges for similar procedures at East Jefferson General Hospital, Ochsner Medical Center, and West Jefferson Medical Center in 2017 and 2018).

## II.   STANDARD OF REVIEW

Rule 702 governs the admissibility of expert testimony and evidence. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010). Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] Citations to Exhibit B refer to the pagination from the deposition transcript.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals. Inc.*, 509 U.S. 579 (1993), the United States Supreme Court made it clear Rule 702 is meant to ensure expert evidence is both reliable and relevant. *McCreless v. Global Upholstery Co.*, 500 F. Supp. 2d 1350, 1353 (N.D. Ala. 2007). The *Daubert* principles apply to all expert testimony, whether based on scientific, technical, or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999). Thus, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id*. at 149 (quoting *Daubert*, 509 U.S. at 592) (alteration adopted). *Daubert* imposes on a trial court the duty to act as a "gate-keeper" under Rule 702, by ensuring that expert testimony is reliable and relevant before being admitted. *Haney v. Eaton Elec., Inc.*, 528 F. Supp. 2d 1262, 1266 (N.D. Ala. 2007).

In the Eleventh Circuit, determining the admissibility of expert testimony requires a "rigorous three-part inquiry" in which the Court determines whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The burden of establishing that expert testimony meets these three elements rests with the proponent of the expert testimony. *Id*. at 1260.

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996) (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988). Expert testimony should only be excluded for its lack of factual basis if it "is 'so fundamentally unsupported that it can offer no assistance to the jury.'" *Id.* (quoting *Loudermill*, 863 F.2d at 570). The Eleventh Circuit has rejected the argument that a district court should have excluded expert testimony about a reliable scientific methodology – there, computational fluid dynamics – because the expert misused the method by inputting incorrectly-calculated data. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1344-45 (11th Cir. 2003). As it explained, "[t]he identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination. Indeed, 'in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'" *Id.* at 1345 (internal citations omitted).

### III.   LEGAL ANALYSIS

As explained above, Ms. Michalski is an experienced medical billing expert and auditor with significant training and experience in medical charge setting, medical billing, and medical bill audits. Ms. Michalski reliably applied her peer-reviewed methodology to determine the reasonable value of the medical services provided to Plaintiff James Johnson. In Michalski's opinion, the reasonable value of those services is significantly lower than the rates charged by Mr. Johnson's medical providers. Her opinions are relevant to the jury's assessment of whether the retail medical charges by Mr. Johnson's physicians are reasonable in amount.

### A.   Ms. Michalski is a well-qualified expert to offer opinions on medical billing and the reasonable value of medical services.

Ms. Michalski has been proffered as an expert to address the reasonable value of the medical services provided to Plaintiff James Johnson. In response, Plaintiffs contend that Ms. Michalski lacks qualifications on life care planning, forensic accounting, economics, or medical causation. This argument ignores the matters on which Ms. Michalski has expressed opinions. Plaintiffs point to no deposition testimony or disclosed opinion by Ms. Michalski that falls within the realm of life care planning, forensic accounting, economics, or medical causation. (*See* Doc. 138 at pp. 20-22). Accordingly, Plaintiffs have waived any argument that Ms. Michalski opined or testified outside the scope of her expertise.

Ms. Michalski is well-qualified to offer opinions on medical billing and the reasonable value of medical services. She is a registered nurse, certified legal nurse consultant, and experienced medical bill auditor and analyst. (Exhibit A at p. 4; ¶ 6). She has 35 years of experience in the medical billing industry. Since 2001, she has worked as a consultant in this field providing medical record reviews, medical bill audits, and life care plans nationwide. Ms. Michalski has testified in over 100 trials and over 450 depositions. (*Id.* at p. 5; ¶ 7). Just last year, Ms. Michalski was found qualified to serve as an expert medical bill auditor by another federal court. *Collins v. Benton*, 470 F. Supp. 3d 596, 603 (E.D. La. 2020). Plaintiffs point to no prior circumstance where Ms. Michalski was found to be unqualified by a Court under *Daubert*.

## B. Ms. Michalski's methodology is utilized throughout the medical community, has been peer-reviewed, and is specific to the local community.

When assessing the reliability of an expert opinion, courts in the Eleventh Circuit consider several factors, including "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Quiet Tech*, 326 F.3d at 1341. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors

will be equally important in evaluating the reliability of proffered expert opinion." *Frazier*, 387 F.3d at 1262.

Ms. Michalski uses a methodology accepted throughout the medical community for determining the reasonable value of medical services. (Exhibit A at ¶ 11). *See also Quiet Tech*, 326 F.3d at 1341 (discussing general acceptance of methodology as important factor to consider in assessing expert testimony). Ms. Michalski utilizes multiple sources to ascertain the reasonable value of medical services, medications, and devices, (*see* Exhibit A at pp. 4-9; ¶ 9), and these sources are generally relied upon in the medical community "by third party administrators, physicians, insurers, individuals, and state and federal agencies," (*see id.* at p. 9; ¶ 11). Thereafter, she conducts a market analysis of the local medical community for similar services to confirm the reasonableness of the values ascertained through the databases. (*Id.* at p. 5; ¶ 8).

Ms. Michalski's methodology has been assessed by a professor of health policy and management at Johns Hopkins University, who determined that it is "sound and represent[s] the state of the art in determining a reasonable value for physician, hospital, ambulance, ambulatory surgical center, and anesthesia services, as well as drug and supply prices." (Exhibit A at p. 214). This peer review of Ms. Michalski's methodology weighs in favor of admitting her testimony in this case.

*See Quiet Tech*, 326 F.3d at 1341 (discussing peer review of methodology as factor in assessing expert's reliability).

In *Collins v. Benton*, a federal court found that Ms. Michalski's "methodology easily passes the 'flexible' reliability test under Federal Rule of Evidence 702." *Collins*, 470 F. Supp. 3d at 604 (quoting *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000)). Another judge in the Eastern District of Louisiana found the same three-part medical billing analysis by another expert to be reliable in *Thomas v. Chambers*, No. 18-4373, 2019 U.S. Dist. LEXIS 215380, at *35-37 (E.D. La. Apr. 26, 2019) (assessing reliability of three-stage medical billing audit technique used by Marilyn Pacheco).

Plaintiffs provide several unpersuasive arguments to attack Ms. Michalski's methodology. Plaintiffs contend that Ms. Michlaski's use of the Physicians' Fee Reference and the OptumInsight National Fee Analyzer is "unreliable" because these sources contain standard disclaimer language. To the contrary, several courts have determined that "an expert opinion relying on values calculated from the Physicians' Fee Reference **is sufficiently reliable under the Federal Rules of Evidence**."[3] *Thomas*, 2019 U.S. Dist. LEXIS 215380, at *36 (emphasis added). *See*

---

[3] Plaintiffs contend that the Physicians' Fee Reference contains "outdated data" because the creators of that database use charge data from prior years to create the edition for a particular year. This is a baseless argument. Ms. Michalski uses the Physicians' Fee Reference for the same year that an individual received a particular medical service because that is the edition that would have been used in the industry when the charge was incurred. As explained above, the Physicians' Fee

{DOC# 00724637}                                11

*also Lee v. Fischer*, 2009 U.S. Dist. LEXIS 151480, at *9 (S.D. Ga. July 10, 2009) (permitting life care planner to testify about projected future care based upon the Physicians' Fee Reference Book); *Spectrum Health, Inc. v. Good Samaritan Employers' Assoc.*, No. 1:08-CV-182, 2008 U.S. Dist. LEXIS 100689, at *27 (W.D. Mich. Dec. 11, 2008) (finding a third party administrator's reliance on the Physicians' Fee Reference to ascertain the 90th percentile of charges made by physicians to be reasonable). Like the Physicians' Fee Reference, the OptumInsight National Fee Analyzer is a database that has been adopted and commonly used in the medical billing industry. (Exhibit A at p. 6; ¶ 9). Ms. Michalski's use of sources commonly accepted in the medical billing industry provides no basis for excluding her as an expert. *Cf.* Fed. R. Evid. 703 (permitting expert witness to rely upon inadmissible facts or data that "experts in the particular field would reasonably rely on").

Plaintiffs contend that Ms. Michalski used reimbursement data from the OptumInsight National Fee Analyzer, rather than charge data. Ms. Michalski specifically discussed using charge data from that source during her deposition:

> Q. My question to you is: Do you still maintain your opinion that what is the national average does not include Medical and third party health insurance companies' reimbursement rates?
>
> A. I do, yes.

---

Reference is a standard source used in the industry, so it is a reliable source to ascertain a reasonable charge for a particular service.

> **All the information is charge data**. And what you're reading there is that all three of these sources also have a column for Medicare reimbursement, separate and apart from the 50th, 75th, and 90th percentile.
>
> So they have certainly Medicare information on reimbursement. They've got guidelines. They've got a lot of information specifically on not only Medicare reimbursement by code, but also just general rules and principles for billing Medicare.
>
> **So that is contained within the source, but that's not the data I'm using. I'm using the 75th percentile.**

(Exhibit B at pp. 171-72) (emphasis added). Thus, although the National Fee Analyzer source included charge data and Medicare reimbursement data, Ms. Michalski only used the charge data.

Plaintiffs contend that Ms. Michalski's reliance on charge data from hospitals is inapplicable to the reasonableness of charges by surgery centers not associated with hospitals, even though many hospitals provide the same surgical care received by Mr. Johnson at a private surgery center. Ms. Michalski explained during her deposition that many hospitals have outpatient surgery centers as well, (Ex. E at p. 72), so comparing the charges by Crescent View to charge data from hospitals for the same services is a reasonable methodology. Indeed, Ms. Michalski testified that a hospital has a higher cost basis than an outpatient surgery center and, therefore, a surgery center should be able to charge lower rates for the same service. (Ex. E at pp. 66, 74). It is reasonable and solid methodology to compare the charges Mr.

Johnson received from a private surgery center to the charges that he would have incurred at a hospital facility in the same geographic area for the same procedure. At its core, this argument is a "factual basis" challenge to the weight of Michalski's testimony that might be appropriate grounds for cross-examination, but not exclusion of Michalski's testimony. *Quiet Tech*, 326 F.3d at 1345.

Finally, Plaintiffs argue that Ms. Michalski should have conducted "community-based research" in this case to ascertain reasonable and customary charges. Ms. Michalski testified in her deposition why that would be an inappropriate methodology for formulating an expert opinion for legal proceedings:

> Q. So you did not call any of the privately-owned ambulatory surgery centers in the Greater New Orleans area to get the amount that they would have billed and charged Mr. Johnson to use its facility for the surgery that he underwent, correct?
>
> A. No. That is not part of my methodology, to call up other facilities. **That would be inherently unreliable, and I would not be able to validate that, even if I could get the information, which is highly unusual for providers to give pricing over the phone.**
>
> Q. Why do you say that calling privately-owned surgery centers in the Greater New Orleans are that are similar to Crescent View would be unreliable?
>
> A. Because, first of all, it's very difficult to get that information. **There would be no way to validate it. It would be a very small sample size**. This is tens of thousands of data points in the American Hospital Directory. They have a hugely robust database of this fact-based data which to rely rather than calling around to facilities and not being able to validate that the information I was given is accurate.

(Exhibit B at pp. 81-82) (emphasis added). The "community-based research" that Plaintiffs propose would be unreliable under the Eleventh Circuit's test because it would be impossible for another billing expert to test and impossible to ascertain an error rate. *See Quiet Tech*, 326 F.3d at 1341. It also would be inconsistent with the current industry practice for determining reasonable billing rates, as it is highly unusual for providers to give pricing information over the phone in the current market. (Exhibit B at p. 82). *See Quiet Tech*, 326 F.3d at 1341. While Ms. Michalski could receive such information in the 1980s and 1990s when she served as a manager in an outpatient surgery center, it is much more difficult (if not impossible) to collect today because pricing information in the medical industry often is considered confidential. *E.g.*, *Freedom Med., Inc. v. Whitman*, 343 F. Supp. 3d 509, 518-20 (E.D. Pa. 2018) (discussing medical device seller's steps to keep price schedules private and whether price schedules could qualify as trade secret); *MedAssets, Inc. v. Fed. Ins. Co.*, 705 F. Supp. 2d 1368, 1369-70 (N.D. Ga. 2010) (discussing medical device seller's assertion that its pricing information was a confidential trade secret).

    **C.**    **<u>Ms. Michalski's opinions will be helpful to the jury.</u>**

Rule 702 requires an expert's opinions to be helpful to the jury. This prong of Rule 702 addresses two concerns. First, expert testimony must relate to an issue in the case. *Daubert*, 509 U.S. at 591 (explaining that expert testimony not relating to a disputed issue "is not relevant and, ergo, non-helpful"). Second, expert testimony

{DOC# 00724637}                        15

must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.*

Ms. Michalski's testimony clearly would be helpful to the jury in analyzing the disputed medical damages in this case. Here, the jury will be instructed to decide "if the treatment was reasonably necessary, **that the expenses for it were reasonable in amount**, and that the need for the treatment was caused by [Defendants'] conduct." Alabama Pattern Jury Instruction 11.15 (3rd edition 2020-2021) (emphasis added). The parties have disagreed throughout the case whether the retail medical charges Plaintiffs rely upon are reasonable in amount. The medical billing issues discussed by Ms. Michalski are not within the common knowledge of laypersons. It clearly is relevant whether the medical charges billed by Plaintiff James Johnson's medical providers are in line with those of the wider medical community. Because Ms. Michalski's opinions address a disputed issue in the case and are tied to the facts of the case, her opinions will be helpful to the jury and are due to be admitted under Rule 702.

### D. The Court should not rely upon Plaintiffs' arguments premised upon Exhibits 3, 4, or 6 because those exhibits have not been filed with the Court.

Plaintiffs quote and cite to six evidentiary exhibits in their Motion *in Limine*. (*See generally* Doc. 138). However, Plaintiffs did not file any of these exhibits with the Court. Exhibits 1 and 2 are Ms. Michalski's expert disclosure and deposition,

which Defendants are filing with this brief. Plaintiffs' Exhibit 5 also appears to be Ms. Michalski's expert disclosure. Plaintiffs have not filed Exhibits 3, 4, or 6, however, and the Court should not rely upon Plaintiffs' representations regarding those exhibits because (1) Plaintiffs did not file them with the initial motion, and (2) Defendants have been prejudiced by the lack of an opportunity to review and respond to the exhibits.

## IV.  CONCLUSION

For the reasons explained above, Ms. Michalski is a well-qualified expert to offer opinions on the reasonable value of the medical services provided to Plaintiff James Johnson. She reliably applied her peer-reviewed methodology that has been found admissible by other federal courts. Finally, her opinions will be helpful to the jury in assessing the reasonableness of the asserted medical expenses. Therefore, the Court should deny Plaintiffs' Motion *in Limine* to Exclude/Limit Nancy Michalski (Doc. 137) in its entirety and admit Ms. Michalski's expert testimony at trial.

Respectfully submitted,

*/s/ Thomas L. Oliver, II*
Thomas L. Oliver, II (ASB-3153-R53T)
Robert A. Arnwine, Jr. (ASB-5964-B65A)
Dennis O. Vann, Jr. (ASB-5854-I61U)
Attorneys for Defendants

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, Alabama 35216

{DOC# 00724637}                    17

Telephone: (205) 822-2006
Facsimile: (205) 822-2057
E-mail: toliver@carrallison.com
  rarnwine@carrallison.com
  dvann@carrallison.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2021, I have served a copy of the above and foregoing on counsel for all parties by:

\_\_\_\_\_Facsimile transmission;
\_\_\_\_\_Hand Delivery;
\_\_\_\_\_Electronic Mail;
\_\_\_\_\_Placing a copy of same in the United States Mail, properly addressed and first class postage prepaid to; and/or
\_\_X\_\_Using the Alafile or CM/ECF system which will send notifications of such to the following:

Eric Tiebauer
**The Tiebauer Law Offices, LLC**
P.O. Box 1421
4363 Highway 45 North
Waynesboro, Mississippi 39367
Telephone: (601) 735-5222
Facsimile: (601) 735-5008

Jason M. Baer
**Baer Law, LLC**
3000 Kingman Street
Suite 200
Metairie, LA 70006
Telephone: (504) 372-0111
Facsimile: (504) 372-0151

Jason F. Giles
**The King Firm**
2912 Canal Street
New Orleans, LA 70119
Telephone: (504) 909-5464

           *s/ Thomas L. Oliver, II*
           Of Counsel