UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES JOHNSON, JR., and ERICKA JOHNSON,  Plaintiffs,  v.  ABF FREIGHT SYSTEM, INC. and MARK EUGENE MASSINGILL,  Defendants. | Case No.: 2:18-cv-01835-MHH |

## MEMORANDUM OPINION AND ORDER

Plaintiffs James and Ericka Johnson have asked the Court to bar the defendants' medical billing expert, Nancy Michalski, from testifying at trial. (Doc. 137). The Johnsons argue that Ms. Michalski is unqualified to testify on various topics and that the expert opinions she plans to offer are unreliable. (Doc. 137, p. 2).

1

**I.**

Under Federal Rule of Evidence 702, an expert may be qualified "by knowledge, skill, experience, training, or education," and an expert may testify at trial and offer an expert opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Eleventh Circuit Court of Appeals requires district courts to apply a "rigorous three-party inquiry" when considering the admissibly of expert testimony under Rule 702. A district court must determine whether:

> (1) the expert is qualified to testify competently regarding the matters [s]he intends to address; (2) the methodology by which the expert reaches [her] conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The party offering expert testimony must demonstrate that the anticipated testimony is admissible under Rule 702. *Frazier*, 387 F.3d at 1260. In this opinion, the Court, exercising its gatekeeping function under *Daubert v. Merrell Dow Pharms., Inc.*,

509 U.S. 579 (1993), considers whether Rule 702 precludes the defendants from calling Ms. Michalski as a witness at trial and asking Ms. Michalski to offer her opinions concerning the reasonableness of Mr. Johnson's medical bills.

## II.

Ms. Michalski's opinion concerns "the reasonable value of past medical services provided to James Johnson, Jr." (Doc. 174-1, p. 14). Ms. Michalski "analyze[d] the charges of past medical services rendered to Mr. Johnson to determine the reasonable marketplace value for the same services, in the same year, in the same communities . . . for all of the past medical treatment provided." (Doc. 174-1, p. 14). The Johnsons do not argue that Ms. Michalski is unqualified to testify as a medical billing auditor. (Doc. 138, p. 3 n.5).

The record indicates that Ms. Michalski earned her Bachelor of Science degree in nursing from the University of Wisconsin-Madison in 1982. (Doc. 174-1, p. 218). From 1982 to 1984, Ms. Michalski worked as a staff nurse at St. John's Health Center in Santa Monica, California where she provided direct patient care in the medical surgical, orthopedics, labor and delivery, and oncology units. (Doc. 174-1, p. 218). From 1984 to 2001, Ms. Michalski served as the co-founder, director of surgical services, and director of the medical billing department for the Outpatient

Surgical Medical Unit in Santa Monica, California.  (Doc. 174-1, p. 217).  In that role, Ms. Michalski:

> [e]stablished medical charges for facility and professional fees, negotiated third party payer contracts, [and was] responsible for the medical billing and collections for over 2,000 surgeries and 5,000 patient visits per year.  Maintained policies and procedures of medical billing department.  Maintained compliance of all state and federal licensures, accreditation and regulations, participate[d] in quality assurance and medical executive committees, direct[ed] patient care and supervision in operating and recovery rooms.

(Doc. 174-1, p. 217).

Ms. Michalski also has founded two medical legal consulting companies in California.  (Doc. 174-1, p. 217).  At both companies, Ms. Michalski has served as a legal nurse consultant and medical bill auditor.  (Doc. 174-1, p. 217).  Ms. Michalski holds a legal nurse consultant certification issued by the Medical-Legal Consulting Institute, and a certificate in Management Development in Healthcare issued by the University of Southern California School of Pharmacy.  (Doc. 174-1, p. 218).  She is a member of the Healthcare Financial Management Association, the American Health Information Management Association, the California Health Information Association, the American Association of Legal Nurse Consultants, and the National Alliance of Certified Legal Nurse Consultants.  (Doc. 174-1, p. 218).  Ms. Michalski has been qualified and has testified as an expert medical bill auditor

in state and federal court over 100 times and has been deposed over 475 times. (Doc. 174-1, p. 5, ¶ 7).

Based on her education and experience, the Court concludes that Ms. Michalski is qualified to offer opinions based on the reasonableness of medical bills.

### III.

The Johnsons argue that Ms. Michalski "should be excluded from testifying at trial because her opinions are not reliable." (Doc. 138, p. 1). They suggest three reasons why Ms. Michalski's opinions are unreliable: first, Ms. Michalski relied on incomplete and inaccurate facts; second, she applied a flawed methodology; and third, she applied a "result-oriented application." (Doc. 138, p. 2).

With respect to incomplete and inaccurate facts, the Johnsons argue that Ms. Michalski "used disparate data sets and flawed sources when reaching her conclusions." (Doc. 138, p. 3). "First, she uses disparate data sets, using data from hospital facilities to assess pricing at non-hospital, privately-owned surgery centers—even though she admits that costs of the same procedures and services Mr. Johnson underwent varies by facility type." (Doc. 138, p. 3). "Second, she heavily relies on unreliable pricing guides; these guides are unreliable both because they indicate—and in some instances expressly state—they are without any binding, legal effect and because there is no transparency in where the guides pull their data from."

(Doc. 138, pp. 3–4). The Johnsons also point out that Ms. Michalski did not pick up the phone and call outpatient surgery centers in the same geographic area to gather data about their pricing. (Doc. 138, pp. 9–11).

Ms. Michalski's methodology included a data-gathering phase followed by a three-pronged analysis of the data. (Doc. 174-1, p. 5, ¶ 8). First, Ms. Michalski separated the medical charges into five categories: (1) Professional Services Including Anesthesia Services; (2) Inpatient Facility Services; (3) Outpatient Facility Fees; (4) Pharmaceuticals; and (5) Durable Medical Equipment, Prosthetics, Orthotics, and Equipment. (Doc. 174-1, pp. 5–9, ¶ 9). After compiling the billing information, Ms. Michalski conducted a three-pronged analysis:

> **First**, each medical charge is audited to apply all applicable medical billing and coding rules, standards, and federal regulations based on category of care.
>
> **Second**, geographic-specific pricing is applied to determine the reasonable marketplace value for the same services within the same community within the same year.
>
> **Third**, a market analysis is conducted of the local medical community for similar services.

(Doc. 174-1, p. 5) (emphasis in original). With respect to the geographic pricing methodology, Ms. Michalski explained:

> Geographic pricing is analyzed with consideration of three data points for each line item charge. The national Usual and Customary (U&C) value is based on the medial of the 75th percentile from the following three pricing databases:

> i. Physicians' Fee Reference (Yale Wassermann, DMD Medical Publishers, Ltd).
> ii. Medical Fees (Context4Healthcare Inc. Practice Management Information Corporation [PMIC]).
> iii. National Fee Analyzer (Optum360, LLC. Optum)
>
> The national U&C value is then multiplied by a geographic adjustment factor, based on the provider's zip code location, to arrive at the local value for medical providers in the same community for the same year, for the same service by CPT code.
>
> The Physicians' Fee Reference (PFR), National Fee Analyzer, and Medical Fees are databases referenced in the audit. These databases have been adopted and commonly used in the medical billing industry for decades. The validity of the data contained in these databases is supported by their routine usage by physicians, insurers, state and federal agencies, hospitals and clinics, and third-party administrators. Published medical journals and articles regularly reference the information.
>
> It is acknowledged that these databases contain disclaimer language for legal liability to guard against misuse and misappropriation, and they recommend that the information be correlated with other sources. Thus, [Ms. Michalski's company] incorporates numerous sources, which are compared and contrasted. They are then correlated into the formulation of the forensic opinion on market value.

(Doc. 174-1, pp. 6–7, ¶ 9).

Gerard Anderson, Ph.D., has peer-reviewed Ms. Michalski's methodology. (Doc. 174-1, pp. 214–15). Dr. Anderson is a Professor of Health Policy and Management, Professor of Medicine, and Professor of International Health at Johns Hopkins University where he also serves as the Director of the Johns Hopkins Center for Hospital Finance and Management, "the only academically based research center focused exclusively on hospitals." (Doc. 174-1, p. 214). Dr. Anderson has

"review[ed] the data sources and methods of health care pricing issues," and in his view "the Medical Bill Review method is credible and of the highest professional standards." (Doc. 174-1, p. 215).

Under Eleventh Circuit precedent, a court must address flaws in methodology; a jury must address flaws in data. Ordinarily, when an expert uses "a method that, in the abstract, is reliable," but when the expert inputs inaccurate or improper data, a district court should admit the evidence, and the party challenging the result of the analysis should identify errors for jurors through cross-examination. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) ("The identification of such flaws in generally reliable scientific evidence is precisely the role of cross-examination."). "Normally, failure to include variables will affect the analysis' probativeness, not its admissibility." *Quiet Tech.*, 326 F.3d at 1346 (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)). A district court should intercede and exclude expert evidence when an expert's flawed methodology makes her opinion "facially authoritative but substantively unsound." *Quiet Tech.*, 326 F.3d at 1346. In the latter scenario, cross-examination will not suffice to correct an invalid opinion.

Here, vigorous cross-examination will expose potential flaws in Ms. Michalski's data and use of hospital data to assess the reasonableness of bills from a non-hospital surgery center, as well as her choice not to call outpatient surgical

8

centers to try and gather pricing data. During her deposition, Ms. Michalski explained that a privately owned surgery center is "a freestanding facility that's not associated to a hospital. Certainly hospitals have outpatient surgery centers as well. So these are just associated to hospitals versus being independent." (Doc. 174-2, p. 73, tp. 72). Ms. Michalski also testified that "generally speaking, hospital charges are higher than surgery centers because surgery centers have a lower cost basis." (Doc 174-2, p. 67, tp. 66). In other words, a privately owned surgery center would be able to charge lower rates for the same services. The Johnsons' criticisms of Ms. Michalski's analysis are simple and logical and can be identified and highlighted through cross-examination at trial.

Under *Quiet Tech*, because the Medical Bill Review method Ms. Michalski used appears sound and because the Johnsons can vigorously cross-examine Ms. Michalski on inconsistencies, erroneous assumptions, and potential flaw in the comparator data she used, the Court may not exclude Ms. Michalski's expert opinions based on Mr. Johnson's reliability argument. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination [and] presentation of contrary evidence … are the traditional and appropriate means of attacking shaky but admissible evidence.").

## IV.

If the jurors find that Ms. Michalski's data and assumptions are credible, then her opinions will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Expert testimony is helpful to jurors if it concerns matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (internal quotations and citations omitted).

The complexities of medical billing are beyond the understanding of the average layperson.[1] Therefore, expert testimony concerning the charges described in Mr. Johnson's medical bills will help jurors decide if the expenses for his

---

[1] *See, e.g.*, Alexander Cornwall, *Missouri Revised Statutes Section 490.715: A Toothless Attempt to Limit the Recovery of Medical Expense Write-Offs*, 76 MO. L. REV. 515, 541 n.190 (2010) ("Based on the complexities of medical bills, it is extremely likely that juries will reach arbitrary and inconsistent valuations of medical services when considering both the amount billed and the amount paid."); John Dewar Gleissner, *Proving Medical Expenses: Time For a Change*, 28 AM. J. TRIAL ADVOC. 649, 650 (2005) ("A bewildering number of methodologies, agreements, regulations, statutes, limitations, schedules, accounting systems, software, review policies, reports, and practices control the coding, billing, and reimbursement for a diverse and expanding range of medical services."); George A. Nation III, *Healthcare and the Balance-Billing Problem: The Solution is the Common Law of Contracts and Strengthening the Free Market for Healthcare*, 61 VILL. L. REV. 153, 153–54 (2016) ("Courts across the country are beginning to understand that hospital billing based on list or chargemaster prices are exorbitant and unfair, because they reflect prices that are set to be discounted and not paid. As a result, courts are becoming aware of the fact that the list prices or chargemaster rates that hospitals claim are usual and customary are instead exorbitant amounts, arbitrarily set by hospitals, as a starting point for negotiating huge discounts with insurers.").

treatment were reasonable in amount.  *See* ALABAMA PATTERN JURY INSTRUCTION 11.15 (3d ed. 2020–21).

## V.

Mr. Johnson also has asked the Court to prohibit Ms. Michalski from offering expert opinions "on life care planning, forensic accounting, economics, or medical causation" and "future medical bills."  (Doc. 138, p. 20).  He argues that Ms. Michalski is unqualified to offer those opinions.  But there is no suggestion that Ms. Michalski has offered, or will offer, opinions on these topics.  In fact, Ms. Michalski testified in her deposition that she will not provide opinions on those topics.  (Doc. 174-2, pp. 15, 26, 27, tpp. 14, 25, 26).  Mr. Johnson acknowledges that Ms. Michalski has said she will not testify to these topics.  (Doc. 138, p. 22). Accordingly, Ms. Michalski will not be permitted to testify at trial about life care planning, forensic accounting, economics, medical causation, or future medical bills Mr. Johnson may incur.

## Conclusion

For the reasons above, the Court will not exclude Ms. Michalski's opinions regarding the reasonableness of Mr. Johnson's medical bills, but the Court will exclude testimony Ms. Michalski may give concerning life care planning, forensic accounting, economics, medical causation, or future medical bills Mr. Johnson may incur.

**DONE** and **ORDERED** this April 23, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE